# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

PFIZER INC., )
PFIZER PHARMACEUTICALS, LLC, )
PFIZER LIMITED, )
C.P. PHARMACEUTICALS INTERNATIONAL C.V., )
PFIZER IRELAND PHARMACEUTICALS, )
WARNER-LAMBERT COMPANY, )
WARNER-LAMBERT COMPANY, LLC )
and )
WARNER-LAMBERT EXPORT LTD., )
)
            Plaintiffs, )
)
    v. )    C.A. No. 07-138-JJF
)
RANBAXY LABORATORIES LIMITED, )
and RANBAXY INC., )
)
            Defendants. )

## PFIZER'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS AND FOR PARTIAL JUDGMENT ON THE PLEADINGS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(c)

Rudolf E. Hutz (#484)
Jeffrey B. Bove (#998)
Mary W. Bourke (#2356)
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899-2207
(302) 658-9141
*Attorneys for the Plaintiffs*

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................... 1

II.    NATURE AND STAGE OF THESE PROCEEDINGS......................... 1

III.   STATEMENT OF FACTS ........................................... 2

    A.     The Present Litigation......................................... 2

    B.     The Prior Lipitor® Litigation. ................................. 3

IV.    SUMMARY OF THE ARGUMENT ..................................... 7

V.     ARGUMENT..................................................... 7

    A.     Legal Standards............................................... 7

        1.     Federal Rule of Civil Procedure 12(c) ........................ 7

    B.     Ranbaxy's Counterclaim of Invalidity and Affirmative
        Defense to Infringement Relating to the '893 Patent are Barred
        by Res Judicata and Collateral Estoppel. ...................... 9

        1.     Res Judicata. ........................................... 9

        2.     Res Judicata Bars Ranbaxy's First Counterclaim and
            Third Affirmative Defense............................... 11

    C.     Infringement of the '893 Patent is Established by Collateral
        Estoppel and Judgment Should Be Entered in Favor of Pfizer.......... 16

        1.     Collateral Estoppel...................................... 16

        2.     Collateral Estoppel Requires That Judgment Be
            Entered That Ranbaxy Has Infringed the '893 Patent. ......... 18

VI.    CONCLUSION.................................................. 19

# TABLE OF AUTHORITIES

Page

**Cases**

*A.B. Dick Co. v. Burroughs Corp.,*
713 F.2d 700 (Fed. Cir. 1983) .................................................................. 16

*Advanced Display Sys., Inc. v. Kent State Univ.,*
No. 3-96-CV-1480-BD, 2002 WL 1489555 (N.D. Tex. July 10, 2002)...................... 15

*Akzona Inc. v. E.I. du Pont de Nemours & Co.,*
662 F.Supp. 603 (D. Del.1987).................................................................. 14

*Applied Medical Res. Corp. v. United States Surgical Corp.,*
352 F. Supp. 2d 1119 (C.D. Cal. 2005) ....................................................... 15

*Bayer AG. v. Biovail Corp.,*
279 F.3d 1340 (Fed. Cir. 2002) ................................................................ 10

*Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,*
402 U.S. 313  (1971)............................................................................ 17

*Board of Trustees of Trucking Employees of N.J. Welfare Fund, Inc. Pension*
*Fund v. Centra,*
983 F.2d 495 (3d Cir.1992) ........................................................ 10, 11, 14

*Brown v. Felsen,*
442 U.S. 127 (1979)............................................................................. 9

*Citisteel USA, Inc. v. General Elec. Co.,*
78 F. App'x 832, 2003 WL 22455408 (3d Cir. 2003)........................................ 8

*Cordis Corp. v. Boston Scientific Corp.,*
431 F. Supp. 2d 465 (D. Del. 2006)........................................................... 16

*Dana v. E.S. Originals, Inc.,*
342 F.3d 1320 (Fed. Cir. 2003) ........................................................ 11, 12

*Dentsply Int'l., Inc. v. Kerr Mfg. Co.,*
42 F. Supp. 2d 385 (1999) ..................................................................... 12

*Deposit Bank v. Board of Councilmen,*
191 U.S. 499 (1903)............................................................................ 12

*Dici v. Pennsylvania,*
91 F.3d 542 (3d Cir.1996) ..................................................................... 17

*Epic Metals Corp. v. H.H. Robertson Co.,*
870 F.2d 1574 (Fed. Cir. 1989) ............................................................... 11

*Foster v. Hallco Mfg. Co.,*
947 F.2d 469 (Fed. Cir. 1991) ....................................................... 11, 13, 14

*Green v. Fund Asset Mgmt., L.P.,*
245 F.3d 214 (3d Cir. 2001) .................................................................... 7

*Gregory v. Chehi,*
   843 F.2d 111 (3d Cir. 1988) .................................................................. 13

*Hallco Mfg. Co. v. Foster,*
   256 F.3d 1290 (Fed. Cir. 2001) ............................................................. 16

*Hart Steel Co. v. Railroad Supply Co.,*
   244 U.S. 294 (1917)............................................................................... 18

*Hawksbill Sea Turtle v. FEMA,*
   126 F.3d 461 (3d Cir. 1997) .................................................................. 17

*Henglein v. Colt Indus. Operating Corp.,*
   260 F.3d 201 (3d Cir. 2001) .................................................................. 17

*Iacaponi v. New Amsterdam Cas. Co.,*
   379 F.2d 311 (3d Cir. 1967) .................................................................... 9

*In re Docteroff,*
   133 F.3d 210 (3d Cir. 1997) .................................................................. 11

*In re General Motors Class E Stock Buyout Sec. Litig.,*
   694 F. Supp. 1119 (D. Del. 1988)............................................................ 7

*Jablonski v. Pan Am. World Airways, Inc.,*
   863 F.2d 289 (3d Cir. 1988) .................................................................... 8

*Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.,*
   11 F.3d 399 (3d Cir. 1993) ...................................................................... 7

*Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc,*
   458 F.3d 244 (3d Cir. 2006), *cert. denied*, No. 06-1001, 2007 WL 159939
   (U.S. Mar. 26, 2007).................................................................... 11, 17

*Langford v. City of Atlantic City,*
   235 F.3d 845 (3d Cir. 2000) .................................................................... 8

*Lawlor v. National Screen Serv. Corp.,*
   349 U.S. 322 (1955)............................................................................... 10

*Leap Wireless Int'l, Inc. v. MetroPCS Communications, Inc.,*
   No. 2:06-CV-240, 2007 WL 541428 (E.D.Tex. Feb. 15, 2007)................... 14

*Lubrizol Corp. v. Exxon Corp.,*
   929 F.2d 960 (3d Cir. 1991) .................................................................. 14

*Lynne Carol Fashions, Inc. v. Cranston Print Works Co.,*
   453 F.2d 1177 (3d Cir. 1972) ................................................................ 17

*Media Techs. Licensing, LLC v. Upper Deck Co.,*
   334 F.3d 1366 (Fed. Cir. 2003) ............................................................. 10

*Mendenhall v. Barber-Greene Co.,*
   26 F.3d 1573 (Fed. Cir. 1994) ............................................................... 18

*Meritor Transmission Corp. v. Eaton Corp.,*
   81 U.S.P.Q.2d 1357, 2006 WL 3951711 (W.D.N.C. Sept. 27, 2006).......... 15

*Montana v. United States,*
   440 U.S. 147 (1979)................................................................................. 10

*National R.R. Passenger Corp. v. Pennsylvania Pub. Util. Comm'n,*
   288 F.3d 519 (3d Cir. 2002) .................................................................. 17

*National R.R. Passenger Corp. v. Pennsylvania Public Utility Comm'n,*
   342 F.3d 242 (3d Cir. 2003) .................................................................. 12

*Novartis Pharmaceuticals Corp. v. Abbott Labs.,*
   375 F.3d 1328 (Fed. Cir. 2004) ............................................................ 17

*Oneida Motor Freight, Inc. v. United Jersey Bank,*
   848 F.2d 414 (3d Cir. 1988) .................................................................... 8

*Oshiver v. Levin, Fishbein, Sedran & Berman,*
   38 F.3d 1380 (3d Cir. 1994) .................................................................... 8

*Pache v. Wallace,*
   Civ. No. 93-5164, 1995 WL 118457 (E.D.Pa. Mar. 20, 1995), *aff'd,* 72
   F.3d 123 (3d Cir. 1995) ........................................................................... 9

*Pall Corp. v. Fisher Scientific Co.,*
   962 F.Supp. 210 (D.Mass. 1997) .......................................................... 15

*Parklane Hosiery Co. v. Shore,*
   439 U.S. 322 (1979)................................................................................. 9

*Penda Corp. v. United States,*
   44 F.3d 967 (Fed. Cir. 1994) ................................................................ 11

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,*
   998 F.2d 1192 (3d Cir. 1993), *cert. denied,* 510 U.S. 1042 (1994)............... 8

*Pfizer Inc. v. Dr. Reddy's Laboratories, Ltd.,*
   359 F.3d 1361 (Fed. Cir. 2004) .............................................................. 2

*Pfizer Inc. v. Ranbaxy Labs. Ltd.,*
   457 F.3d 1284 (Fed. Cir. 2006), *cert. denied,* No. 06-1016, 2007 WL
   957312 (U.S. Apr. 2, 2007) ..................................................................... 5

*Pfizer, Inc. v. Apotex, Inc.,*
   480 F.3d 1348 (Fed. Cir. 2007) .............................................................. 2

*Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.,*
   170 F.3d 1373 (Fed. Cir. 1999) ............................................................ 11

*Pryor v. National Collegiate Athletic Ass'n.,*
   288 F.3d 548 (3d Cir. 2002) .................................................................... 8

*Raytech Corp. v. White,*
   54 F.3d 187 (3d Cir. 1995) .................................................................... 17

*Rider v. Pennsylvania,*
   850 F.2d 982 (3d Cir. 1988) .................................................................... 9

*Seborowski v. Pittsburgh Press Co.,*
  188 F.3d 163 (3d Cir. 1999) ........................................................................... 17

*Securities Indus. Ass'n v. Board of Governors,*
  900 F.2d 360 (D. C. Cir. 1990) ....................................................................... 15

*Senior Loiza Corp. v. Vento Development Corp.,*
  760 F.2d 20 (1st Cir. 1985) ............................................................................... 8

*Shuttlesworth v. Birmingham,*
  394 U.S. 147 (1969) .......................................................................................... 9

*Southern Pacific R. Co. v. United States,*
  168 U.S. 1 (1897) ............................................................................................ 10

*Southmark Prime Plus, L.P. v. Falzone,*
  776 F.Supp. 888 (D. Del. 1991) ....................................................................... 7

*Stevenson v. Sears, Roebuck & Co.,*
  713 F.2d 705 (Fed. Cir. 1983) ........................................................................ 11

*Stoll v. Gottlieb,*
  305 U.S. 165 (1938) ........................................................................................ 12

*Taha v. I.N.S.,*
  828 F. Supp. 362 (E.D. Pa. 1993) .................................................................... 9

*Temco Electric Motor Co. v. Apco Manufacturing Co.,*
  275 U.S. 319 (1928) ........................................................................................ 16

*Turbe v. Government of the Virgin Islands,*
  938 F.2d 427 (3d Cir. 1991) ............................................................................. 7

*Unique Coupons, Inc. v. Northfield Corp.,*
  No. 99C7445, 2000 WL 631324 (N.D. Ill. May 16, 2000) ............................ 15

*United States v. Wood,*
  925 F.2d 1580 (7th Cir. 1991) .......................................................................... 8

*Zip Dee, Inc. v. Dometic Corp.,*
  905 F. Supp. 535 (N.D. Ill. 1995) .................................................................. 15

**Statutes and Other Authorities**

21 U.S.C. § 355(b)(1) ......................................................................................... 3

35 U.S.C. § 103 ............................................................................................. 2, 13

35 U.S.C. § 271(e)(2) ................................................................................ 1, 16, 20

35 U.S.C. § 271(e)(4)(A) .................................................................................... 6

35 U.S.C. § 271(e)(4)(B) .................................................................................... 6

35 U.S.C. § 282 ................................................................................................. 14

37 CFR § 1.765 ................................................................................................. 13

Fed.R.Civ.P. 12(c) ................................................................................................ 7

Fed.R.Civ.P. 12(c)(1) ........................................................................................... 1

Fed.R.Civ.P. 13(a) .............................................................................................. 14

Restatement (Second) of Judgments § 24(2) .................................................... 13

Restatement (Second) of Judgments § 27 ......................................................... 17

Restatement (Second) of Judgments § 27 cmt. c .............................................. 15

U.S. Dept. of Health and Human Servs., Food and Drug Admin., Center for
    Drug Evaluation and Res., Office of Pharmaceutical Science, Office of
    Generic Drugs, Patent and Exclusivity Addendum, *Approved Drug
    Products with Therapeutic Equivalence Evaluations* (27th ed. 2007) ....................... 2, 3

## I.    INTRODUCTION

Pfizer Inc., Pfizer Pharmaceuticals, LLC, Pfizer Limited, C.P. Pharmaceuticals International C.V., Pfizer Ireland Pharmaceuticals, Warner-Lambert Company, Warner-Lambert Company, LLC and Warner-Lambert Export Limited (collectively "Pfizer") have moved under Federal Rule of Civil Procedure 12(c)(1) to dismiss defendants/counterclaimants' Ranbaxy Laboratories Limited ("RLL") and Ranbaxy Inc. ("RI") (collectively "Ranbaxy") First Counterclaim and Third Affirmative Defense relating to United States Letters Patent Nos. 4,681,893 ("the '893 patent") on the basis of *res judicata.* Pfizer also moves for entry of judgment on Pfizer's First Claim for Relief for infringement of the '893 patent under 35 U.S.C. § 271(e)(2) based on Ranbaxy's ANDA seeking approval from the FDA to engage in the commercial manufacture, use, or sale of a product containing atorvastatin calcium as an active ingredient prior to the expiration of the '893 patent, as extended, because Ranbaxy is collaterally estopped from denying infringement.

## II.    NATURE AND STAGE OF THESE PROCEEDINGS

Pfizer brought this patent infringement action against Ranbaxy for infringement of the '893 patent and United States Letters Patent No. 6,455,574 ("the '574 patent"). The '893 patent, entitled "Trans-6-[2-(3- or 4-Carboxamido-Substituted Pyrrol-1-yl)Alkyl]-4-Hydroxypyran-2-One Inhibitors of Cholesterol Synthesis," issued on July 21, 1987, on an application filed by Bruce D. Roth and assigned to Warner-Lambert Company. The '893 patent claims a genus of chemical compounds which embrace atorvastatin calcium. Atorvastatin calcium is the common name for [R-(R*,R*)]-2-(4-fluorophenyl)-ß--dihydroxy-5-(1-methylethyl)-3-phenyl-4-[(phenylamino)carbonyl]-1H-pyrrole-1-heptanoic acid, calcium salt (2:1).

Ranbaxy answered and counterclaimed, *inter alia*, seeking a declaration of invalidity of the '893 patent and its term extension on grounds of obviousness under 35 U.S.C. § 103. Pfizer has separately moved to dismiss Ranbaxy's counterclaims directed to U.S. Patent No. 5,273,995 ("the '995 patent").

This is Pfizer's opening brief in support of its motion to dismiss Ranbaxy's counterclaim and defense grounded on alleged invalidity of the '893 patent and in support of its motion for partial judgment on the pleadings.

## III.    STATEMENT OF FACTS[1]

### A.    The Present Litigation

Pfizer is the owner of record of the '893, '574 and '995 patents. Pfizer, through Parke-Davis Pharmaceutical Research, a division of Warner-Lambert Company, holds an approved New Drug Application ("NDA") for a formulation containing atorvastatin calcium, which it sells in the United States under the registered name Lipitor®. Comp. ¶ 26. Pfizer also holds an approved NDA for a formulation containing the active ingredient amlodipine besylate which it sells in the United States under the registered name Norvasc®. *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1352 (Fed. Cir. 2007); *Pfizer Inc. v. Dr. Reddy's Laboratories, Ltd.*, 359 F.3d 1361, 1364 (Fed. Cir. 2004). Additionally, Pfizer holds an approved NDA for a formulation containing both active ingredients amlodipine besylate and atorvastatin calcium, which it sells in the United States under the registered name Caduet®. Comp. ¶ 16; Orange Book, Patent and Exclusivity Addendum,

---

[1] Unless otherwise indicated, all facts are taken from uncontested facts in the Complaint (D.I. 1) (hereinafter "Comp. ¶__") or as alleged in Ranbaxy's Amended Answer and Counterclaims (D.I. 10) (hereinafter "Ans. ¶__").

pp. 5-6.[2]  The '893 and '574 patents are identified pursuant to 21 U.S.C. § 355(b)(1) by

the United States Food and Drug Administration ("FDA") as covering Pfizer's Caduet®

product.  Comp. ¶¶ 17, 18; Orange Book, Patent and Exclusivity Addendum, pp. 6-8.

The present litigation was precipitated by Ranbaxy's letter notice dated January

24, 2007 to Pfizer stating that Ranbaxy had filed an Abbreviated New Drug Application

("ANDA"), seeking approval from FDA to engage in the commercial manufacture, use,

and sale of a product containing amlodipine besylate and atorvastatin calcium as the

active ingredients ("Ranbaxy's New ANDA Product") prior to the expiration of the '893,

'995 and '574 patents.  Comp. ¶ 57; Ans. ¶ 57.  RI is a wholly-owned subsidiary of RLL

(Comp. ¶ 22; Ans. ¶ 22), as is Ranbaxy Pharmaceuticals, Inc ("RPI").

**B.    The Prior Lipitor® Litigation.**

Pfizer received letters dated January 23, 2003 from RPI (the "January 23, 2003

letters") which notified Pfizer that RLL had filed ANDA No. 76-477, seeking approval

from FDA to engage in the commercial manufacture, use, and sale of a product

containing atorvastatin calcium as its active ingredient ("Ranbaxy's Atorvastatin

Product") prior to the expiration of the '893 and '995 patents.  Comp. ¶ 27; Ans. ¶ 27.

Pursuant to 35 U.S.C. §271(e)(2), Pfizer filed suits against RLL and RPI in this Court

alleging that Ranbaxy's proposed ANDA product infringed the '893 and '995 patents.

Ans. ¶ 95.  Pfizer's Complaints were consolidated into Civil Action No. 03-209-JJF

(collectively the "Lipitor® Litigation").  Ans. ¶ 95. In response to Pfizer's Complaints,

Ranbaxy filed an answer and several counterclaims.  Ranbaxy averred that it did not

---

[2] U.S. Dept. of Health and Human Servs., Food and Drug Admin., Center for Drug Evaluation and Res., Office of Pharmaceutical Science, Office of Generic Drugs, Patent and Exclusivity Addendum, *Approved Drug Products with Therapeutic Equivalence Evaluations* (27th ed. 2007) (the "Orange Book").

3

infringe the '893 or '995 patents. Ranbaxy also challenged the validity and enforceability of both the '893 and '995 patents.

EP 247 633 is the European counterpart to the '893 patent. Comp. ¶ 35; Ans. ¶ 35. In its current ANDA notice letter attached to Ranbaxy's Complaint in this case as Exhibit "D", page 4, Ranbaxy asserts that the '893 patent is obvious over EP 179 559, cited during the prosecution of the EP 247 633. Prior to trial in the Lipitor® Litigation, Ranbaxy was aware of EP 247 633 and its prosecution before the European Patent Office. Comp. ¶ 36; Ans. ¶ 36. Specifically, Ranbaxy was aware of the first examination report in the EP 247 633 prosecution, the citation of EP 179 559 in the first examination report and Warner-Lambert's response thereto. Comp. ¶ 37; Ans. ¶ 37. Indeed, EP 247 633 was marked as trial Exhibit PTX 244 in the Lipitor® Litigation. Comp. ¶ 38; Ans. ¶ 38. A portion of the prosecution history of EP 247 633 was even the subject of a stipulation in the Lipitor® Litigation, dated September 3, 2004 (D.I. 191). Comp. ¶ 39; Ans. ¶ 39. The cover page of EP 179 559 was produced in discovery as document number P0267818 in the Lipitor® Litigation. Comp. ¶ 40; Ans. ¶ 40. Despite its admitted awareness, Ranbaxy elected not to rely on EP 179 559 as prior art for any purpose in the Lipitor® Litigation or in any briefing filed by Ranbaxy after trial. Comp. ¶ 41; Ans. ¶ 41.

In its current Answer and Counterclaims, Ranbaxy denied that it had "[a]t no time" "plead or assert[ed] that any claim in the '893 patent was invalid for obviousness" under section 103. Comp. ¶ 34; Ans. ¶ 34. However, neither the Pre-Trial Order entered by the Court (D.I. 219), nor Ranbaxy's post-trial Opening Proposed Findings of Fact and Conclusions of Law (D.I. 293) in the Lipitor® Litigation asserted obviousness of the '893 patent as a basis of invalidity.

By its opinion dated December 16, 2005 in the Lipitor® Litigation, this Court held that the '893 patent was not invalid or unenforceable. Comp. ¶ 42; Ans. ¶ 42. The Court also concluded that the '893 patent claims were not limited to racemic mixtures, but also embraced individual trans-form isomers, corresponding to the R-trans and S-trans, as well as their trans-form mixtures, including racemates. Comp. ¶ 43; Ans. ¶ 43. The Court further held that Ranbaxy's Atorvastatin Product, the subject of ANDA No. 76-477, literally infringed claims 1-4 and 8-9 of the '893 patent, Comp. ¶ 44; Ans. ¶ 44, and held that the patent term extension of the '893 patent was not invalid or unenforceable. Comp. ¶ 45; Ans. ¶ 45.

Ranbaxy appealed this Court's decision in the Lipitor® Litigation to the United States Court of Appeals for the Federal Circuit ("Federal Circuit") in Appeal No. 06-1179 (the "Lipitor® Appeal"). Comp. ¶ 46; Ans. ¶ 46. In the Lipitor® Appeal, the Federal Circuit affirmed that the '893 patent was infringed, not invalid and not unenforceable. Comp. ¶ 47; Ans. ¶ 47; *Pfizer Inc. v. Ranbaxy Labs. Ltd.*, 457 F.3d 1284 (Fed. Cir. 2006), *cert. denied*, No. 06-1016, 2007 WL 957312 (U.S. Apr. 2, 2007). The Federal Circuit further affirmed that the patent term extension of the '893 patent was not invalid and not unenforceable. Comp. ¶ 48; Ans. ¶ 48.

Ranbaxy filed a Petition for Rehearing and Rehearing En Banc in the Lipitor® Appeal and the Federal Circuit denied that petition. Comp. ¶ 49; Ans. ¶ 49. Ranbaxy sought certiorari in the United States Supreme Court from the decision of the Federal Circuit in the Lipitor® Appeal. *Ranbaxy Laboratories Limited v. Pfizer Inc.*, No. 06-1016, 2007 WL 957312 (U.S. Apr. 2, 2007). On April 2, 2007, the Supreme Court denied Ranbaxy's petition. *Id.*

An amended final judgment was entered by the District Court in the Lipitor Litigation, by Orders of the Court dated November 7, 2006 and November 30, 2006. Comp. ¶ 50; Ans. ¶ 50; (D.I. 338 and 344). Judgment has thus been entered in the Lipitor® Litigation "in favor of plaintiffs Pfizer Inc., Pfizer Ireland Pharmaceuticals, Warner-Lambert Company, Warner-Lambert Company LLC and Warner-Lambert Export, Ltd. (collectively 'Pfizer') and against defendants Ranbaxy Laboratories Limited and Ranbaxy Pharmaceuticals Incorporated (collectively 'Ranbaxy') on Pfizer's claims that Ranbaxy has infringed claims 1-4, and 8-9 of the '893 patent...", Comp. ¶ 51; Ans. ¶ 51, and further, "that pursuant to 35 U.S.C. § 271(e)(4)(A), the effective date of any approval of Ranbaxy's Abbreviated New Drug Application No. 76-477 shall be a date which is not earlier than the date of expiration of the '893 Patent and its patent term extension (September 24, 2009, with attached six months of pediatric exclusivity ending on March 24, 2010, to which Pfizer is entitled)." Comp. ¶ 52; Ans. ¶ 52. The Judgment also states: "that pursuant to 35 U.S.C. § 271(e)(4)(B), defendants Ranbaxy Laboratories Limited and Ranbaxy Pharmaceuticals Incorporated, each of their officers, agents, servants, employees and attorneys, and those persons in active concert or participation with them or either of them are permanently enjoined from engaging in the manufacture, use, offer to sell, or sale within the United States, or importation into the United States, of any product comprising atorvastatin calcium covered by, or the use of which is covered by claims 1-4 and 8-9 of the '893 Patent." Comp. ¶ 53; Ans. ¶ 53. The Judgment is final and unappealable.

Moreover, Ranbaxy has admitted its atorvastatin calcium at issue here is "the same active ingredient" in both ANDA 76-477 and in its new ANDA. Comp. ¶ 64; Ans. ¶ 64.

## IV.    SUMMARY OF THE ARGUMENT

1.    Ranbaxy's First Counterclaim of Invalidity and Third Affirmative Defense to infringement relating to the '893 patent are barred by *res judicata* and/or collateral estoppel based on the final judgment entered in the prior Lipitor® Litigation. Ranbaxy's '893 counterclaim and affirmative defense should be dismissed.

2.    Infringement of the '893 patent is established by collateral estoppel and judgment on the pleadings should be entered in favor of Pfizer on its First Claim for Relief.

## V.    ARGUMENT

### A.    Legal Standards

#### 1.    Federal Rule of Civil Procedure 12(c)

When deciding a Rule 12(c) motion for judgment on the pleadings, a district court must view the facts and inferences to be drawn from the pleadings in the light most favorable to the non-moving party. *Green v. Fund Asset Mgmt., L.P.*, 245 F.3d 214, 220 (3d Cir. 2001); *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 406 (3d Cir. 1993). The motion can be granted only if no relief could be afforded under any set of facts that could be provided. *Turbe v. Government of the Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991); *see also Southmark Prime Plus, L.P. v. Falzone*, 776 F. Supp. 888, 891 (D. Del. 1991). However, the court need not adopt conclusory allegations or statements of law. *In re General Motors Class E Stock Buyout Sec. Litig.*, 694 F. Supp. 1119, 1125 (D. Del. 1988). Judgment on the pleadings will only be granted if it is clearly established that no material issue of fact remains to be resolved and that the movant is entitled to judgment as a matter of law. *Jablonski v. Pan Am. World Airways, Inc.*, 863

F.2d 289, 290 (3d Cir. 1988).[3]

> The Third Circuit has stated:

> We must determine whether, under any reasonable reading of the pleadings, the plaintiffs may be entitled to relief, and we must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom. The complaint will be deemed to have alleged sufficient facts if it adequately put the defendants on notice of the essential elements of the plaintiffs' cause of action.

*Langford v. City of Atlantic City*, 235 F.3d 845, 847 (3d Cir. 2000).

All uncontested allegations to which the parties had an opportunity to respond are taken as true and documents incorporated into the pleadings should be considered. *United States v. Wood*, 925 F.2d 1580, 1581 (7th Cir. 1991); *see Pryor v. National Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002); *Citisteel USA, Inc. v. General Elec. Co.*, 78 F. App'x 832, 835 n.3, 2003 WL 22455408 (3d Cir. 2003). In addition, the court may consider matters of public record, and authentic documents upon which the complaint is based if attached to the complaint or as an exhibit to the motion. *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1391 (3d Cir. 1994); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993), *cert. denied*, 510 U.S. 1042 (1994).

A district court deciding a motion for judgment on the pleadings may take judicial notice of the factual record of a prior proceeding. *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416 & n.3 (3d Cir. 1988) (Rule 12(b)(6) motion); *see also Senior Loiza Corp. v. Vento Development Corp.*, 760 F.2d 20, 25 (1st Cir. 1985) (district

---

[3] A 12(c) motion for judgment on the pleadings is subject to the same standard as a rule 12(b)(6) motion to dismiss. *See Citisteel USA, Inc. v. General Elec. Co.*, 78 F. App'x 832, 835 n.3, 2003 WL 22455408 (3d Cir. 2003); *Shelly v. Johns-Manville Corp.*, 798 F.2d 93, 97 n.4 (3d Cir. 1986).

court may properly notice facts set forth in appellate opinion regarding same party in related case) (*citing Shuttlesworth v. Birmingham*, 394 U.S. 147, 157 (1969)); *Pache v. Wallace*, Civ. No. 93-5164, 1995 WL 118457, at *2 (E.D. Pa. Mar. 20, 1995), *aff'd*, 72 F.3d 123 (3d Cir. 1995) (district courts are entitled to take judicial notice of public records in considering a motion for dismissal or motion for judgment on the pleadings); *Taha v. I.N.S.*, 828 F. Supp. 362, 364 n.6 (E.D. Pa. 1993); *see also Iacaponi v. New Amsterdam Cas. Co.*, 379 F.2d 311, 312 (3d Cir. 1967) (affirming district court which took judicial notice of state court proceedings and dismissed action on basis of *res judicata*).

**B.     Ranbaxy's Counterclaim of Invalidity and Affirmative Defense to Infringement Relating to the '893 Patent are Barred by Res Judicata and Collateral Estoppel.**

**1.     Res Judicata.**

A final judgment on the merits bars relitigation of the same cause of action between the same parties. *Brown v. Felsen*, 442 U.S. 127, 131 (1979); *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979). Thus, a claim that was litigated and decided on its merits can not be presented in a second suit. Hence, Ranbaxy is precluded from asserting in this suit the claim *explicitly rejected* in the final judgment in the Lipitor Litigation – Ranbaxy's claim that the '893 patent is invalid. This cause of action for invalidity, raised both as an affirmative defense and as a counterclaim in both litigations, cannot be tried again between Ranbaxy and Pfizer.

The doctrine of *res judicata,* also known as "claim preclusion"[4], is "central to the

---

[4] *See Rider v. Pennsylvania*, 850 F.2d 982, 989 (3d Cir. 1988) (to minimize confusion arising from the frequent interchangeable use of "res judicata" and "collateral estoppel," the term "claim preclusion" is used instead of "res judicata" and "issue preclusion" instead of "collateral estoppel."); *Lawlor v. National Screen*

purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions." *Montana v. United States*, 440 U.S. 147, 153 (1979).

As the Supreme Court stated in *Montana*:

> A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a "right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies . . .." *Southern Pacific R. Co. v. United States*, 168 U.S. 1, 48-49, 18 S.Ct. 18, 27, 42 L.Ed. 355 (1897). Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action. Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation. Application of both doctrines is central to the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions. To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.

*Montana v. United States*, 440 U.S. at 153 (citations and footnote omitted).

The primary purpose of claim preclusion is to prohibit piecemeal adjudication of claims arising out of the same transaction or occurrence. *Board of Trustees of Trucking Employees of N.J. Welfare Fund, Inc. Pension Fund v. Centra*, 983 F.2d 495, 504 (3d Cir. 1992).

Although the Federal Circuit generally applies regional circuit case law to the issues of *res judicata* or collateral estoppel, *see Media Techs. Licensing, LLC v. Upper Deck Co.*, 334 F.3d 1366, 1369 (Fed. Cir. 2003) (res judicata)*; Bayer AG. v. Biovail Corp.*, 279 F.3d 1340, 1345 (Fed. Cir. 2002) (collateral estoppel), it has applied its own

---

*Serv. Corp.*, 349 U.S. 322, 326 (1955).  To avoid confusion with the specific meaning of "claim" in patent law, this brief employs the more traditional terminology res judicata and collateral estoppel.

law in some circumstances. *See Dana v. E.S. Originals, Inc.*, 342 F.3d 1320, 1327-28 (Fed. Cir. 2003) (Dyk, Cir. J., *concurring*) (advocating Federal Circuit law apply to all issues of *res judicata* and collateral estoppel and *citing Foster v. Mfg. Co.,* 947 F.2d 469, 475 (Fed. Cir. 1991) (applying Federal Circuit law)); *Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*, 170 F.3d 1373, 1379-80 (Fed. Cir. 1999); *Stevenson v. Sears, Roebuck & Co.*, 713 F.2d 705, 709 (Fed. Cir. 1983)). However, both the Third Circuit and the Federal Circuit have looked to the Restatement (Second) of Judgments on issues of *res judicata* and collateral estoppel. *See, e.g., Foster v. Hallco Mfg. Co.*, 947 F.2d at 477 n.7; *Penda Corp. v. United States*, 44 F.3d 967, 972 (Fed. Cir. 1994*); Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.,* 458 F.3d 244, 255 (3d Cir. 2006), *cert. denied*, No. 06-1001, 2007 WL 159939 (U.S. Mar. 26, 2007); *In re Docteroff,* 133 F.3d 210, 214 (3d Cir. 1997). There does not appear to be a significant difference between the standards applied by the two appeals courts.

In the Third Circuit, claim preclusion requires: (1) a final judgment on the merits in a prior suit; (2) involving the same parties or their privities; and (3) a subsequent suit based on the same cause of action. *Id; see also Epic Metals Corp. v. H.H. Robertson Co.,* 870 F.2d 1574, 1576 (Fed. Cir. 1989). Moreover, claim preclusion applies even when a particular claim was not actually litigated but could have been raised in the prior proceeding. *Board of Trustees v. Centra*, 983 F.2d at 504.

### 2.    Res Judicata Bars Ranbaxy's First Counterclaim and Third Affirmative Defense.

Very plainly, as is evident from the face of the pleadings in this case, the three elements of *res judicata* are satisfied.

First, it is beyond question that the prior Lipitor® Litigation has concluded with a

final judgment against Ranbaxy Laboratories Limited and Ranbaxy Pharmaceuticals, Inc. Judgments are entitled to preclusive effect even when an appeal is pending. *National R.R. Passenger Corp. v. Pennsylvania Public Utility Comm'n,* 342 F.3d 242, 260 (3d Cir. 2003), citing *Stoll v. Gottlieb,* 305 U.S. 165, 170 (1938); *Deposit Bank v. Board of Councilmen,* 191 U.S. 499, 520 (1903); *see also Dana v. E.S. Originals, Inc.*, 342 F.3d at 1323, *citing* Restatement (Second) of Judgments § 13.    In this case, Ranbaxy has appealed to the Federal Circuit and it has lost.    Ranbaxy has sought certiorari to the Supreme Court and it has lost.

Second, Ranbaxy Laboratories Limited was a party in the prior Lipitor® Litigation, and is the defendant/counterclaimant here.  Ranbaxy, Inc., while not a named party in the previous Lipitor® Litigation, is admittedly a wholly owned subsidiary of Ranbaxy Laboratories Limited and its agent in the United States for processing of FDA applications, like the current ANDA.  Like Ranbaxy Inc., Ranbaxy Pharmaceuticals Inc. is a wholly owned subsidiary of Ranbaxy Laboratories Limited.  The close relationship of Ranbaxy, Inc. to the Lipitor® Litigation is further demonstrated by the fact that Ranbaxy, Inc. was included (at Ranbaxy's request) in the covenant not to sue on the claims of the '995 patent (except claim 6) granted to Ranbaxy by Pfizer (D.I. 255, Ex. A).  That covenant was the basis for the dismissal of the claims of the '995 patent (except claim 6) from the Lipitor® Litigation.  Privity and mutuality of estoppel are present, even if no longer required in the strict sense.  *See Dentsply Int'l, Inc. v. Kerr Mfg. Co.,* 42 F. Supp. 2d 385, 393 (1999).

Third, Ranbaxy's First Counterclaim and Third Affirmative Defense (as they are stated in the Amended Answer and Counterclaims) present the issue of the validity of the

'893 patent, an issue already decided against Ranbaxy in the Lipitor® Litigation.  The counterclaim and affirmative defense in this case, and the counterclaims and affirmative defense in the Lipitor® Litigation, present the identical cause of action. *See* Restatement (Second) of Judgments § 24(2) (all actions arising from the same transaction or series of transactions are regarded as constituting a single cause of action); *Gregory v. Chehi*, 843 F.2d 111, 117 (3d Cir. 1988) (for purposes of claim preclusion analysis, the term "claim" is defined "broadly in transactional terms, regardless of the number of substantive theories advanced in the multiple suits by the plaintiff") (citing Restatement (Second) of Judgments); *Foster v. Hallco*, 947 F.2d at 478-79 (same).  Further, the ANDA product in the current litigation (amlodipine besylate and amorphous atorvastatin calcium) explicitly contains Ranbaxy's ANDA product from the Lipitor® Litigation (amorphous atorvastatin calcium).  The previous litigation has conclusively determined that the '893 patent (and its patent term extension) is not invalid or unenforceable.  Therefore, Ranbaxy's attempt to relitigate the validity of the '893 patent or its term extension must be rejected.

Ranbaxy's Third Affirmative Defense and First Counterclaim specifically allege that the '893 patent is invalid as obvious for failure to satisfy the provisions of 35 U.S.C. § 103.[5]  In its January 24, 2007 ANDA notice letter, Ranbaxy asserts that the '893 patent is obvious in view of EP 179 559.  Comp., Ex. D, p 4.  But Ranbaxy admits that it was aware of EP 179 559 prior to trial of the Lipitor® Litigation.  Comp. ¶ 37, Ans. ¶ 37.

---

[5] In its January 24, 2007 ANDA notice letter and in its original Answer and Counterclaims (D.I. 7), Ranbaxy made another argument for invalidity of the '893 patent and its term extension.  Ranbaxy asserted that the term extension of the '893 patent was invalid because of the purported failure of the term extension applicant to disclose material information, citing 37 CFR § 1.765.  Comp., Ex. D, p 2.  This same argument was thoroughly litigated by Ranbaxy in the Lipitor® Litigation and Lipitor® Appeal.  Ranbaxy's Amended Answer and Counterclaims withdrew this argument as a basis for invalidity.

This argument is therefore foreclosed because, as a matter of law, Ranbaxy could have raised it as a ground for invalidity in the prior litigation but elected not to do so. Ranbaxy is therefore barred by the prior judgment that the '893 patent is not invalid.

Furthermore, the preclusive effect of the prior judgment is not diminished because Ranbaxy now purports to assert a different ground for invalidity, especially one available to it previously. The law is clear that Ranbaxy cannot split its claim by asserting one set of invalidity defenses to the patent in one litigation and then assert previously unasserted invalidity defenses in a new litigation. *See Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 964 (3d Cir. 1991). Moreover, under Federal Rule of Civil Procedure 13(a), Ranbaxy's entire invalidity defense was a compulsory counterclaim in the Lipitor® Litigation which is waived if not timely asserted. *See generally Leap Wireless Int'l, Inc. v. MetroPCS Communications, Inc.*, No. 2:06-CV-240, 2007 WL 541428, at *4 (E.D. Tex. Feb. 15, 2007) *citing Akzona Inc. v. E.I. du Pont de Nemours & Co.,* 662 F. Supp. 603, 618 (D. Del. 1987) (stating that a declaratory judgment action and counterclaim for infringement involving the same patents are both seeking to define the scope and determine the validity of those patents). *See also* 35 U.S.C. § 282 (affirmative defenses to claim of infringement). Ranbaxy cannot split its claim of invalidity of the '893 patent into two actions.

*Res judicata* is also not defeated because an issue was not actually litigated. The question is whether the issue "could have been raised in the earlier proceeding." *Board of Trustees v. Centra*, 983 F.2d at 504; *Foster v. Hallco,* 947 F.2d at 478 ("The general concept of claim preclusion is that when a judgment is rendered in favor of a party to litigation, the plaintiff may not thereafter maintain another action on the same 'claim',

and defenses that were raised or *could have been* raised by the defendant in that action are extinguished."). Validity of the '893 patent was fully litigated in the Lipitor® Litigation. Any arguments that Ranbaxy might have made regarding the validity of the '893 patent or its term extension, but elected not to make, are barred by res judicata. *See Pall Corp. v. Fisher Scientific Co.,* 962 F. Supp. 210, 213 (D. Mass. 1997) (judgment of validity entered in prior infringement action has estoppel effect as to all arguments as to validity); *Zip Dee, Inc. v. Dometic Corp.,* 905 F. Supp. 535, 537 (N.D. Ill. 1995). "[O]nce an issue [of patent validity] is raised and determined, it is the entire issue that is precluded, not just the particular arguments raised in support of it in the first case." *Id.* at 538 (*citing Securities Indus. Ass'n v. Board of Governors*, 900 F.2d 360, 364 (D.C. Cir. 1990); Restatement (Second) of Judgments § 27 cmt. c, at 253). Of course, here, Ranbaxy admits it was actually aware of the exact reference which it now seeks to use as grounds for invalidity. Thus, that Ranbaxy could have asserted this art is beyond peradventure. There is no unfairness engendered by preventing it from doing so now[6].

Judgment should therefore be entered dismissing Ranbaxy's Third Affirmative

---

[6] It should be noted that "with respect to the specific argument of validity, courts have held the validity of a patent 'is a single issue for purposes of collateral estoppel.'" *Meritor Transmission Corp. v. Eaton Corp.*, 81 U.S.P.Q.2d 1357, 1361, 2006 WL 3951711 (W.D.N.C. Sept. 27, 2006), *quoting Applied Medical Res. Corp. v. United States Surgical Corp.*, 352 F. Supp. 2d 1119, 1126 (C.D. Cal. 2005); *Zip Dee, Inc.,* 905 F. Supp. 535; *Pall Corp.,*962 F. Supp. 210; *Advanced Display Sys., Inc. v. Kent State Univ.*, No. 3-96-CV-1480-BD, 2002 WL 1489555, at *10 (N.D. Tex. July 10, 2002) ("To the extent that any other defenses exist, ADS is precluded from litigating them under the doctrine of collateral estoppel."); *Unique Coupons, Inc. v. Northfield Corp.*, No. 99C7745, 2000 WL 631324, at *1 (N.D. Ill. May 16, 2000) ("Insofar as Count I seeks a declaration of invalidity and unenforceability of the '901 and '280 patents, that claim is dismissed because the exact issue was previously litigated and resolved in favor of Unique in a prior litigation between the same parties.") Thus, Ranbaxy's invalidity claim and defense is equally barred by collateral estoppel. *See also infra* 16-17.

Defense and First Counterclaim.

**C.     Infringement of the '893 Patent is Established by Collateral Estoppel and Judgment Should Be Entered in Favor of Pfizer.**

The doctrine of collateral estoppel precludes Ranbaxy from denying infringement of the '893 patent based on the atorvastatin calcium contained in its new ANDA product. As such, Pfizer is entitled to judgment as a matter of law on its First Claim for Relief that Ranbaxy has infringed the '893 patent under 35 U.S.C. § 271(e)(2). Ranbaxy admitted that the atorvastatin calcium contained in its new product is "the same active ingredient" as its atorvastatin calcium product adjudged to be infringing in the Lipitor® Litigation. Comp. ¶ 64, Ans. ¶ 64. Because the atorvastatin calcium is the same, no defense to infringement is available to Ranbaxy and judgment must be entered as a matter of law that Ranbaxy has infringed the '893 patent under 35 U.S.C. § 271(e)(2) by submission of its paragraph IV certification to the patent in its new ANDA. Preclusion applies. *Hallco Mfg. Co. v. Foster,* 256 F.3d 1290, 1297-98 (Fed. Cir. 2001) ("On remand, the district court should compare the Hallco I and the Hallco II, and if it concludes that that the two devices are essentially the same or only colorably different, it should find that Hallco is precluded from challenging validity and infringement.").[7]

**1.     Collateral Estoppel.**

Collateral estoppel, like *res judicata*, has the dual purpose of protecting litigants

---

[7] The combination of atorvastatin calcium with amlodipine besylate cannot alter the infringement analysis. "It is fundamental that one cannot avoid infringement merely by adding elements if each element recited in the claims is found in the accused device." *A.B. Dick Co. v. Burroughs Corp.,* 713 F.2d 700, 703 (Fed. Cir. 1983) *citing Temco Electric Motor Co. v. Apco Mfg. Co.,* 275 U.S. 319, 328 (1928); *Cordis Corp. v. Boston Scientific Corp.,* 431 F. Supp. 2d 465, 475 (D. Del. 2006) (Presence of a clinically significant feature in an accused device distinct from that found in a patented product does not correlate with an absence of infringement of the underlying patent.)

from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation. *Blonder-Tongue Labs., Inc. v. University of Illinois Found.*, 402 U.S. 313, 328-329 (1971):

> When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

Restatement (Second) of Judgments § 27.

The party seeking to invoke collateral estoppel bears the burden of showing four elements: (1) the previous determination was necessary to the decision; (2) the identical issue was previously litigated; (3) the issue was actually decided in a decision that was final, valid, and on the merits; and (4) the party being precluded from relitigating the issue was adequately represented in the previous action. *See, e.g., Novartis Pharmaceuticals Corp. v. Abbott Laboratories,* 375 F.3d 1328, 1333 (Fed. Cir. 2004); *Henglein v. Colt Indus. Operating Corp.*, 260 F.3d 201, 209 (3d Cir. 2001); *Hawksbill Sea Turtle v. FEMA*, 126 F.3d 461, 475 (3d Cir. 1997); *Dici v. Pennsylvania*, 91 F.3d 542, 548 (3d Cir. 1996); *Raytech Corp. v. White*, 54 F.3d 187, 190 (3d Cir. 1995). The Third Circuit has also considered whether the party being precluded "had a full and fair opportunity to litigate the issue in question in the prior action," *Seborowski v. Pittsburgh Press Co.*, 188 F.3d 163, 169 (3d Cir. 1999), and whether the issue was determined by a final and valid judgment. *National R.R. Passenger Corp. v. Pennsylvania Pub. Util. Comm'n*, 288 F.3d 519, 525 (3d Cir. 2002). Further, "parties should be estopped only on issues they actually deem important, and not on incidental matters." *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc*., 458 F.3d at 249, *citing Lynne Carol Fashions, Inc. v. Cranston Print Works Co*., 453 F.2d 1177, 1183 (3d Cir. 1972).

17

## 2.    Collateral Estoppel Requires That Judgment Be Entered That Ranbaxy Has Infringed the '893 Patent.

Each of the elements of collateral estoppel is established on the pleadings.  First, Ranbaxy cannot seriously contend that the infringement of the '893 patent by Ranbaxy's atorvastatin calcium product was not necessary to the Judgment entered in the Lipitor® Litigation.  The Judgment enjoins Ranbaxy "from engaging in the manufacture, use, offer to sell, or sale within the United States, or importation into the United States **of any product comprising atorvastatin calcium** covered by, or the use of which is covered by" the '893 patent (emphasis added).   Second, the identical issue was previously litigated because Ranbaxy has admitted its product is the same as previously determined to infringe.  Third, Ranbaxy cannot seriously contend that the issue of infringement of the '893 patent was not actually decided.   Fourth, Ranbaxy cannot contend that its representation was inadequate in the Lipitor® Litigation.  The same counsel is retained for this action.   Fifth, Ranbaxy had a full and fair opportunity to litigate the validity, enforceability and infringement of the '893 patent and its term extension in the prior action and Ranbaxy has fully exercised its right to appeal.  Sixth, there is no question that the judgment is final and valid and on the merits as to the '893 patent.  Ranbaxy has exercised its appeal rights from the final judgment and the action is complete.[8]   Nor can Ranbaxy credibly claim that the issue of the infringement of the '893 patent by its atorvastatin calcium product was merely incidental to the prior litigation.   Infringement

---

[8] Ranbaxy cannot even claim that this situation involves "applying collateral estoppel based on a judgment that might be reversed."  *Mendenhall v. Barber-Greene Co.*, 26 F.3d 1573, 1578 n.5 (Fed. Cir. 1994) *citing Hart Steel Co. v. Railroad Supply Co.*, 244 U.S. 294, 299 (1917) (Court's affirmance of patent invalidity judgment in case decided same day "leaves our decision in this case [giving it preclusive effect] uncomplicated").

of the '893 patent was the central issue in the prior case.

## VI.   **CONCLUSION**

For the reasons stated above, defendants/counterclaimants' Third Affirmative Defense and First Counterclaim with respect to United States Letters Patent No. 4,681,893 should be dismissed as barred under the doctrines of res judicata and collateral estoppel. Judgment should further be entered on Pfizer's First Claim for Relief that Ranbaxy has infringed United States Letters Patent No. 4,681,893 under 35 U.S.C. § 271(e)(2) by filing of Ranbaxy's ANDA seeking approval from the FDA to engage in the commercial manufacture, use, or sale of a product containing atorvastatin calcium as an active ingredient prior to the expiration of the patent.

RESPECTFULLY SUBMITTED,


 /s/ Jeffrey B. Bove
Rudolf E. Hutz (#484)
Jeffrey B. Bove (#998)
Mary W. Bourke (#2356)
CONNOLLY BOVE LODGE & HUTZ LLP
1007 North Orange Street
Wilmington, DE 19899
(302) 658-9141
*Attorneys for Plaintiffs, Pfizer Inc.,*
*Pfizer Pharmaceuticals, LLC, Pfizer*
*Limited, C.P. Pharmaceuticals*
*International C.V., Pfizer Ireland*
*Pharmaceuticals, Warner-Lambert*
*Company, LLC and Warner Lambert Export, Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 3, 2007, a true copy of the foregoing was hand delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the following and the document is available for viewing and downloading from CM/ECF:

> Frederick L. Cottrell, III
> Jameson A.L. Tweedie
> Richards, Layton & Finger
> One Rodney Square
> Wilmington, DE 19801

I hereby certify that on the May 3, 2007, I have sent by Electronic Mail the foregoing document to the following non-registered participants:

> Joseph M. Reisman
> William R. Zimmerman
> Payson LeMeilleur
> KNOBBE, MARTENS, OLSON & BEAR, LLP
> 2040 Main Street, 14th Floor
> Irvine, CA 92614

> By: /s/ *Jeffrey B. Bove*
> Jeffrey B. Bove (#998)
> 1007 North Orange Street
> Wilmington, DE 19801
> Telephone: (302) 658-9141

536959_1.DOC

**1**

Not Reported in F.Supp.2d                                                                 Page 1
Not Reported in F.Supp.2d, 2002 WL 1489555 (N.D.Tex.)
**(Cite as: 2002 WL 1489555 (N.D.Tex.))**

H

Only the Westlaw citation is currently available.

United States District Court, N.D. Texas, Dallas Division.
ADVANCED DISPLAY SYSTEMS, INC. Plaintiff,
v.
KENT STATE UNIVERSITY, et al. Defendants.
**Nos. 3-96-CV-1480-BD, 3-96-CV-1608-BD.**

July 10, 2002.

Company that developed and promoted polymer-free liquid crystal displays (LCDs) brought action against patent owner and its licensee seeking declaration of patent invalidity. Owner and licensee brought action for infringement, and actions were consolidated. Following initial judgment for company and reversal by Court of Appeals, 212 F.3d 1272, jury in second trial found patent was valid, enforceable, and infringed by company's devices and methods. Patent owner and licensee moved for entry of judgment on the verdict, and company moved for judgment as a matter of law or for a new trial. The District Court, Kaplan, United States Magistrate Judge, held that: (1) patent terms were sufficiently definite to meet enablement requirement; (2) verdicts finding both literal infringement and infringement under the doctrine of equivalents were not fatally inconsistent; (3) reasonable royalty for infringement was improperly calculated; (4) owner and licensee were entitled to enhanced damages; (5) owner and licensee were entitled to prejudgment interest on award of compensatory damages; (6) injunction was sufficiently specific; and (7) declaration of validity would not be limited to those defenses actually rejected by the jury.

Ordered accordingly.

West Headnotes

**[1]** Patents ☞101(6)
291k101(6) Most Cited Cases
Patent claim directed to polymer-free liquid crystal display (LCD) device, which defined "visible spectrum" to include wavelengths between about 350 nanometers (nm) and 850 nm, was sufficiently defin-

ite to meet enablement requirement, even if light with wavelength above 750 nm was infrared and thus not visible, in view of testimony that patent included broader range to account for individual differences in ability to perceive the visible spectrum and supporting testimony regarding the phenomenon of "psychophysics." 35 U.S.C.A. § 112, para. 2.

**[2]** Patents ☞101(6)
291k101(6) Most Cited Cases
Term "stable," as used in limitation requiring that cell wall structure and liquid crystal cooperate to form focal conic and twisted planar textures that were stable in the absence of a field, in patent claim directed to polymer-free liquid crystal display (LCD) device, was sufficiently definite to meet enablement requirement, although patent did not specify how long cell had to remain stable in the absence of a field, as one skilled in the art could still determine the meaning of the term. 35 U.S.C.A. § 112, para. 2.

**[3]** Patents ☞101(6)
291k101(6) Most Cited Cases
Term "pulse" as used in limitation describing electric field pulse of a specified magnitude, in patent claim directed to polymer-free liquid crystal display (LCD) device, was sufficiently definite to meet enablement requirement; testimony of patentee's experts that allegedly similar patent did not involve a "pulse" did not show ambiguity in term, as distinction between patents was adequately explained by one skilled in the art, who testified that, unlike patent at issue, similar patent did not specify any particular magnitude. 35 U.S.C.A. § 112, para. 2.

**[4]** Patents ☞101(6)
291k101(6) Most Cited Cases
Limitation in patent claim directed to polymer-free liquid crystal display (LCD) device requiring a means for addressing said liquid crystal material was sufficiently definite to meet enablement requirement; patent provided that addressing means could be of any type known in the art, and, in describing preferred embodiments of the patent, specification made clear that material could be addressed in various ways and incorporated in other types of cells. 35 U.S.C.A. §

Case 1:07-cv-00138-JJF     Document 17-2     Filed 05/03/2007     Page 3 of 13     Page 2

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1489555 (N.D.Tex.)
**(Cite as: 2002 WL 1489555 (N.D.Tex.))**

112, para. 2.

**[5] Patents ☞314(6)**

291k314(6) Most Cited Cases

Although the requirements of literal patent infringement and infringement under the doctrine of equivalents are unquestionably different, they are not necessarily fatally inconsistent, and jury verdict finding both types of infringement did not require a new trial, although verdict would be reformed and court would enter judgment only on finding of literal infringement.

**[6] Patents ☞319(1)**

291k319(1) Most Cited Cases

Reasonable royalty damages awarded to patent owner and licensee for infringement could not include amount based on up-front payments paid to infringer by licensees of infringing technology, absent evidence that such payments reflected amount that patent owner and licensee would have demanded for patented technology in a hypothetical negotiation with infringer, at the time the infringement occurred. 35 U.S.C.A. § 284.

**[7] Patents ☞319(3)**

291k319(3) Most Cited Cases

Patent owner and licensee were entitled to treble damages for competitor's willful infringement of patent directed to polymer-free liquid crystal display (LCD) device, as jury implicitly found that competitor did not rely on competent legal advice when it took infringing actions, and, although jury in first trial had found in favor of competitor, competitor used improper litigation tactics to secure that verdict. 35 U.S.C.A. § 284.

**[8] Patents ☞319(4)**

291k319(4) Most Cited Cases

Patent owner and licensee were entitled to prejudgment interest on award of compensatory damages representing reasonable royalty rate in patent infringement action, as there was no evidence that royalty rate included prejudgment interest; interest would be awarded at average prime rate from date that patent issued and infringement commenced, until the date of judgment.

**[9] Patents ☞319(4)**

291k319(4) Most Cited Cases

Pre-judgment interest was not recoverable on award of enhanced damages in patent infringement action. 35 U.S.C.A. § 284.

**[10] Patents ☞287(6)**

291k287(6) Most Cited Cases

President of patent infringer who willfully induced infringement was jointly and severally liable for compensatory and enhanced damages awarded to patent owner and licensee for infringement.

**[11] Patents ☞317**

291k317 Most Cited Cases

Permanent injunction entered in patent infringement action, which referred to claims of patent and prohibited any further infringement by competitor, was sufficiently specific to provide adequate notice of conduct enjoined, even if it did not include limiting language requested by competitor to exclude competitor's new product, since any determination that new product did not infringe patent would be premature. Fed.Rules Civ.Proc.Rule 65(d), 28 U.S.C.A.

**[12] Declaratory Judgment ☞385**

118Ak385 Most Cited Cases

Declaratory relief requested by patent owner and licensee in their successful infringement action, as to validity of patent, would not be limited to those defenses that were actually considered and rejected by the jury; rather, owner and licensee were entitled to declaration that patent was valid and enforceable in all respects, as patents were entitled to presumption of validity until adjudged invalid, and, to extent that other defenses existed, infringer was precluded from litigating them under doctrine of collateral estoppel. 35 U.S.C.A. § 282.

*MEMORANDUM OPINION AND ORDER*
KAPLAN, Magistrate J.

**\*1** Kent Display Systems, Inc. ("KDS"), Kent State University ("KSU") and Kent Research Corporation ("KRC"), collectively referred to as "Kent," have filed a motion for entry of judgment on the verdict and other relief in this patent case. Advanced Display Systems, Inc. ("ADSI") and Dr. Bao Gang Wu

Not Reported in F.Supp.2d                                                                Page 3
Not Reported in F.Supp.2d, 2002 WL 1489555 (N.D.Tex.)
**(Cite as: 2002 WL 1489555 (N.D.Tex.))**

("Wu"), collectively referred to as "ADS," have filed a motion for judgment as a matter of law or, alternatively, for a new trial. For the reasons stated herein, both motions are granted in part and denied in part.

I.

KSU owns a patent on a polymer-free liquid crystal display ("LCD") device using cholesteric visible material that is stimulated and sustained through a single electric field pulse of sufficient duration and voltage to create a contrast between the material's light reflecting and light scattering textures. (U.S. Patent No. 5,453,863, also known as the "West patent"). [FN1] The patent is licensed through KRC to KDS. In early 1996, Kent learned that ADSI was promoting a polymer-free LCD and threatened suit to enforce its patent. This prompted ADSI to file a declaratory judgment action to declare the West patent invalid. After settlement negotiations failed, Kent sued ADSI and its president, Dr. Bao Gang Wu, for infringement. The two cases were consolidated and proceeded to trial in November 1997.

> FN1. LCDs are used in a variety of electro-optic products, such as digital watches and notebook computer screens, to display images and information.

Following two weeks of testimony and extensive deliberations, a jury found that the West patent was invalid for anticipation and obviousness and was not infringed. The court entered a final judgment in favor of ADS. On appeal, the Federal Circuit Court of Appeals reversed and remanded for a new trial. *Advanced Display Systems, Inc. v. Kent State University, 212 F.3d 1272 (Fed.Cir.2000), cert. denied, 532 U.S. 904, 121 S.Ct. 1226, 149 L.Ed.2d 136 (2001).* This decision was based, in large part, on the deposition testimony of Hongxi "Victor" Zhou, a former ADSI engineer, taken in another case. Zhou testified that ADSI's own efforts to develop a polymer-free LCD had been wholly unsuccessful until Dr. Zvi Yaniv, the former president of KDS, visited ADSI in early 1994 and brought with him a prototype of Kent's cholesteric LCD and its electrical driver. While Yaniv was at lunch, Zhou and other ADSI engineers were instructed to surreptitiously disassemble the prototype, photograph its component parts, and

then reassemble the device in such a manner so as to avoid any indication of tampering. Within a month, ADSI had replicated the circuitry necessary to operate the device and filed its own patent application for a polymer-free LCD.

Although Zhou testified to essentially the same facts during the first trial, his prior deposition was never produced to Kent. In fact, ADSI's former counsel claimed that Zhou's deposition was subject to an oral protective order by a state court judge and characterized the photograph of Kent's prototype as "attorney work product" on its privilege log. [FN2] The Federal Circuit found this evidence potentially outcome determinative on the issues of non-obviousness and infringement and chastised ADSI's counsel for their role in the cover-up. In reversing and remanding the case for a new trial, the court wrote:

> FN2. Despite the fact that this photograph was taken more than two years before ADSI filed suit, counsel refused to produce the picture because the original print was photocopied by attorney. The Federal Circuit condemned this conduct as an "egregious discovery ploy." *Advanced Display Systems, 212 F.3d at 1288-89* ("This court ... is unable to find any legal principle that even remotely supports the notion that an otherwise discoverable document alchemically metamorphisizes into privileged work product simply because an attorney photocopies it.").

**\*2** From the record below, it appears to this court that ADS's development of its LCD technology consisted of deceitful and conniving machinations that amounted to nothing short of corporate espionage. Regretfully, the conduct of ADS's counsel in defending such actions was equally egregious. Indeed, to say that counsel's conduct during discovery raises the collective eyebrow of this court would be to understate the severity of their transgressions.
*Id.* at 1288.

After the parties conducted additional limited discovery, a second trial was held from December 3-20, 2001. This time, the jury found that the West patent

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2002 WL 1489555 (N.D.Tex.)

(Cite as: 2002 WL 1489555 (N.D.Tex.))

Page 4

was valid and enforceable and that 22 devices or methods made, used, or sold by ADSI infringed claims 1-8 and 10 of the patent both literally and under the doctrine of equivalents. The jury also found that ADSI and Wu induced others to infringe the patent and acted willfully. A total of $1.5 million in damages was awarded as a reasonable royalty to compensate KDS for such infringement. Kent now moves for entry of judgment on the verdict while ADS seeks judgment as a matter of law or, alternatively, a new trial. Both motions have been briefed by the parties and are ripe for determination.

## II.

The jury returned a verdict in favor of Kent and against ADS as to all claims and defenses raised in this case. As a result, the court is required to "promptly approve the form of the judgment and the clerk shall thereupon enter it." Fed. R. Civ. P. 58. By contrast, a party is entitled to judgment as a matter of law if "there is no legally sufficient evidentiary basis" to submit an issue to the jury. Fed. R. Civ. P. 50(a)(1); Conkling v. Turner, 18 F.3d 1285, 1300 (5th Cir.1994). A mere "scintilla" of evidence is insufficient. There must be a conflict in substantial evidence to create an issue of material fact. Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir.1969) (en banc). A Rule 50(a) motion should be granted only "if the facts and inferences point so strongly and overwhelmingly in favor of the moving party ... that reasonable jurors could not have arrived at a contrary verdict." Crist v. Dickson Welding, Inc., 957 F.2d 1281, 1285 (5th Cir.), cert. denied, 506 U.S. 864, 113 S.Ct. 187, 121 L.Ed.2d 132 (1992); Shipman, 411 F.2d at 374. The entire record must be viewed in the light most favorable to the party opposing the motion. Resolution Trust Corp. v. Cramer, 6 F.3d 1102, 1109 (5th Cir.1993).

## III.

Five issues are raised by the cross-motions filed by Kent and ADS: (1) whether the West patent is invalid for indefiniteness; (2) whether a new trial is required because of inconsistent verdicts on the claims of literal infringement and infringement under the doctrine of equivalents; (3) whether the evidence supports damages in the amount of $1.5 million; (4) whether Kent is entitled to enhanced damages, pre-judgment

and post-judgment interest, and injunctive and declaratory relief; and (5) whether Wu is jointly and severally liable for any damage award. The court will address each issue in turn.

### A.

*3 The West patent claims, inter alia:

A light modulating polymer-free reflective cell comprising cell wall structure and a chiral nematic liquid crystal light modulating material having positive dielectric anisotropy and a pitch length effective to reflect light in the visible spectrum, said cell wall structure and liquid crystal cooperating to form focal conic and twisted planar textures that are stable in the absence of a field, and a means for addressing said liquid crystal material, said means adapted to selectively establish an electric field pulse of a magnitude effective to transform at least a portion of said liquid crystal from a focal conic texture to a light reflecting twisted planar texture, and an electric field pulse of a magnitude effective to transform at least a portion of the liquid crystal from a light reflecting twisted planar texture to a focal conic texture.

(ADS App. at 300-01) (emphases added). ADS contends that the patent is invalid because the terms "visible spectrum," "stable," "pulse," and "addressing means" lack a clear and definite meaning. [FN3]

> FN3. In an attempt to impose reasonable limits on post-trial briefing, the court restricted the opening briefs of each party to 30 pages. See ORDER, 1/29/02 at 1, ¶ 2. ADS now requests an opportunity to submit additional briefing on the issue of invalidity for indefiniteness in order to provide "more detailed support from the record and supporting case law ..." (ADS Mem. at 24-26, n. 48-51). Ordinarily, the court would not hesitate to modify these briefing limitations to allow for a full and fair presentation of the issues. However, ADS has elected to devote the first five pages of its opening brief to attacking opposing counsel and rehashing arguments that already have been rejected by the Federal Circuit and this court. Had ADS been more prudent in its briefing decisions, it could have adequately presented its argu-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ments and authorities in the space allotted.

### 1.

A patent specification must contain "a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains ... to make and use the same ..." 35 U.S.C. § 112, ¶ 2. More particularly, the specification must "distinctly claim[ ] the subject matter which the applicant regards as his invention." *Id.* The claims must have a clear and definite meaning when construed in light of the entire patent document. *Miles Laboratories, Inc. v. Shandon Inc.,* 997 F.2d 870, 874-75 (Fed.Cir.1993), *cert. denied,* 510 U.S. 1100, 114 S.Ct. 943, 127 L.Ed.2d 232 (1994). A claim is sufficiently definite if one skilled in the art would understand the bounds of the claim when read in light of the specification. *North American Vaccine, Inc. v. American Cyanamid Co.,* 7 F.3d 1571, 1579 (Fed.Cir.1993), *cert. denied,* 511 U.S. 1069, 114 S.Ct. 1645, 128 L.Ed.2d 365 (1994); *Miles Laboratories,* 997 F.2d at 875. A patent that fails to meet this requirement is invalid for indefiniteness. *See Exxon Research and Engineering Co. v. United States,* 265 F.3d 1371, 1375 (Fed.Cir.2001). However, a patent is presumed to be valid once it has issued. In order to overcome this presumption, a party must present clear and convincing evidence of invalidity. 35 U.S.C. § 282; *North American Vaccine,* 7 F.3d at 1579.

### 2.

[1] The West patent defines the "visible spectrum" to include wavelengths between "about 350 [nanometers] and 850 [nanometers]." (ADS App. at 296). ADS argues that this term is indefinite because light with a wavelength above 750 nm is infrared and, therefore, not visible. (*See* ADS Sur-Reply at 9). The court disagrees. Although there is some evidence that the visible spectrum encompasses a range of wavelengths with an upper limit of 750 nm, Dr. West testified that his patent includes a broader range to account for individual differences in the ability to perceive the visible spectrum. (Kent Reply App. at 987). This conclusion is supported by Dr. Meyer's testimony regarding the phenomenon of "psychophysics." (*See* ADS Reply App. at 54). [FN4] ADS has

failed to show by clear and convincing evidence that the wavelengths contained in the West patent do not encompass the "visible spectrum" as that term is used in the specification.

> FN4. In technical terms, psychophysics is "[t]he science of the general relations between mind and body" such as "the investigation of the relations between physical stimuli and psychic action in the production of sensations." OXFORD ENGLISH DICTIONARY ONLINE, *http: // dictionary.oed.com/cgi/entry/00191666/00191666s e2.* As more simply explained by Dr. Meyer, the phenomenon involves "testing of many people to see what they would report ..." (ADS Reply App. at 54).

### 3.

**\*4** [2] Next, ADS contends that the term "stable" is indefinite because the West patent does not specify how long the cell must remain stable in the absence of a field. Although the patent itself does not expound on the stability requirement, one skilled in the art may still be able to determine the meaning of the term. Claims may be sufficiently definite even when some degree of testing or experimentation is required to define the boundaries of the claimed invention. *See Exxon Research and Engineering,* 265 F.3d at 1380 (claim limitation specifying that catalyst should be treated "for a period sufficient to increase substantially the initial catalyst activity" not invalid for indefiniteness where persons skilled in the art could perform periodic activity checks to determine if limitation was met); *Application of Caldwell,* 50 C.C.P.A. 1464, 319 F.2d 254, 258 (U.S.Ct. Cust. & Pat.App.1963) (upholding claim language referring to aspirin dosage in "an effective amount ... for stimulating growth"). The mere fact that the West patent does not specify how long the cell must remain stable in the absence of a field does not make the patent invalid for indefiniteness.

### 4.

[3] ADS further contends that the term "pulse" as used in the West patent is ambiguous and therefore indefinite. In support of this argument, ADS points out that although the West patent and the Haas patent

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1489555 (N.D.Tex.)
(Cite as: 2002 WL 1489555 (N.D.Tex.))

Page 6

both apply voltages above and below the nematic threshold to achieve changes in state, Kent's experts testified that only the method described in the West patent involves a "pulse." Without a more precise definition of this critical term, ADS maintains that it is impossible to determine "what kind of electrical signal can be used without infringement." (ADS Mem. at 25).

This simplistic argument ignores the plain language of the patent specification. The West patent claims an "electric field pulse of a magnitude effective to transform at least a portion of said liquid crystal from a focal conic texture to a light reflecting twisted planar texture" and back again. (ADS App. at 300-01). As Dr. Meyer testified, the Haas patent does not describe a pulse because it does not specify any particular magnitude. (*Id.* at 42, 319 F.2d 254). In light of this logical explanation by one skilled in the art, the court is not persuaded that the term "pulse" is indefinite.

5.

[4] Finally, ADS contends that the West patent is indefinite because it fails to describe a specific "means for addressing" the liquid crystal material. Such is not the case. The patent provides that "[t]he addressing means can be of any type known in the art, such as an active matrix, a multiplexing circuit, electrodes and lasers ..." (*Id.* at 296, 319 F.2d 254). In describing the preferred embodiments of the patent, the specification makes clear that:

> [T]he material can be addressed in various ways and incorporated in other types of cells. For example, instead of being addressed by externally activated electrodes, the material can be addressed by an active matrix, a multiplexing scheme or other type of circuitry, all of which will be evident to those working in the art.

**\*5** (*Id.* at 297, 319 F.2d 254). This description is more than adequate to satisfy the requirements of section 112.

In sum, ADS has failed to prove by clear and convincing evidence that the West patent is invalid for indefiniteness. Judgment as a matter of law is not proper on this ground.

B.

Alternatively, ADS seeks a new trial because the jury found that all the accused devices infringed claims 1-8 and 10 of the West patent both literally and under the doctrine of equivalents. (Jury Charge at 44, 46). According to ADS, these verdicts are "fatally inconsistent" because the doctrine of equivalents applies only where there is no literal infringement.

The court agrees that the doctrine of equivalents applies only where there is no literal infringement. *See Hormone Research Foundation v. Genetech, Inc., 904 F.2d 1558, 1564 (Fed.Cir.1990), cert. denied, 499 U.S. 955, 111 S.Ct. 1434, 113 L.Ed.2d 485 (1991).* A patent is infringed if every limitation set forth in a claim is present in an accused product either literally or by a substantial equivalent. *Seal Flex, Inc. v. Athletic Track and Court Construction, 172 F.3d 836, 842 (Fed.Cir.1999); Jurgens v. McKasy, 927 F.2d 1552, 1560 (Fed.Cir.), cert. denied, 502 U.S. 902, 112 S.Ct. 281, 116 L.Ed.2d 232 (1991).* Literal infringement occurs when every element of the patented device is literally present in the accused device. *Texas Instruments v. U.S. International Trade Commission, 805 F.2d 1558, 1562 (Fed.Cir.1986).* By contrast, the equitable doctrine of equivalents permits a finding of infringement where the accused device, although not literally infringing, performs the same function in substantially the same way to achieve the same result as the patented device. *Graver Tank & Manufacturing Co. v. Linde Air Products Co., 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950); Malta v. Schulmerich Carillons, Inc., 952 F.2d 1320, 1325 (Fed.Cir.1991), cert. denied, 504 U.S. 974, 112 S.Ct. 2942, 119 L.Ed.2d 566 (1992).* Stated differently, infringement under the doctrine of equivalents is shown if the differences between the accused and patented devices are insubstantial to one of ordinary skill in the art. *Warner-Jenkinson Co. v. Hilton Davis Chemical Co., 520 U.S. 17, 40, 117 S.Ct. 1040, 1053, 137 L.Ed.2d 146 (1997); Catalina Marketing International, Inc. v. Coolsavings.com, Inc., 289 F.3d 801, 812 (Fed.Cir.2002).*

[5] Although the requirements of literal infringement and infringement under the doctrine of equivalents are unquestionably different, they are not necessarily "fatally inconsistent." Indeed, the Federal Circuit has

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2002 WL 1489555 (N.D.Tex.)
**(Cite as: 2002 WL 1489555 (N.D.Tex.))**

tacitly approved the common practice of submitting patent cases under both theories. *See, e.g. Southwest Software, Inc. v. Harlequin Inc.,* 226 F.3d 1280, 1282 (Fed.Cir.2000); *Mahurkar v. C.R. Bard, Inc.,* 79 F.3d 1572, 1575 (Fed.Cir.1996); *Laitram Corp. v. NEC Corp.,* 62 F.2d 1388, 1395 (Fed.Cir.1995); *Joy Technologies v. Flakt, Inc.,* 820 F.Supp. 802, 807-08 (D.Del.1993), *aff'd,* 38 U.S.P.Q.2d 1216, 1218 (Fed.Cir.1995), *cert. denied,* 516 U.S. 1172, 116 S.Ct. 1264, 134 L.Ed.2d 212 (1996); *Goodwall Construction Co. v. Beers Construction Co.,* 824 F.Supp. 1044, 1054-55 (N.D.Ga.1992), *aff'd,* 991 F.2d 751, 757-58 (Fed.Cir.1993). Absent controlling authority to the contrary, the court will not disturb the verdict merely because the jury found both literal infringement and infringement under the doctrine of equivalents. Instead, the court will reform the verdict and enter judgment on the finding of literal infringement.

### C.

**\*6** At the conclusion of the trial, the jury awarded $1.5 million in damages to KDS as compensation for the infringing activities of ADS. (Jury Charge at 49). This sum is based largely on the testimony of Ed J. Lynch, a certified public accountant, and purportedly represents reasonable royalty damages. ADS now contends that this damage award is not supported by the evidence.

### 1.

Section 284 of the Patent Act provides, in pertinent part:

Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.

35 U.S.C. § 284. Compensatory damages under this statute may be established by one of three methods: (1) lost profits; (2) an established royalty; or (3) a reasonable royalty. *Mobile Oil Corp. v. Amoco Chemicals Corp.,* 915 F.Supp. 1333, 1340 (D.Del.1994). In the absence of an established royalty, a reasonable royalty may be determined by reference to "a hypothetical royalty resulting from arm's length negotiations between a willing licensor and a willing licensee." *Trell v. Marlee Electronics Corp.,* 912 F.2d 1443, 1445 (Fed.Cir.1990) (citation omitted).

### 2.

[6] The evidence adduced at trial showed that ADSI realized $881,000 from the foreign and domestic sales of its 22 accused devices. According to Lynch, a reasonable royalty for the alleged infringement of the West patent was five percent of these sales, or $44,073. (ADS App. at 81; ADS Reply App. at 122, 143). ADS does not dispute this aspect of the damage calculation. However, Lynch also noted that, unlike Kent, ADSI included other types of fees in its license agreements. For example, ADSI received $10,305,500 in up-front "technology transfer fees," "license fees," and "development fees" from third-party licensees. (*See* ADS App. at 84, 87). Lynch concluded that "a 50 percent sharing ratio of these paid-up fees is appropriate and that amount is $2,082,750." (*Id.* at 101). [FN5] The jury ultimately awarded KDS $1.5 million in reasonable royalty damages.

> FN5. Some of these fees were not considered by Lynch in calculating damages "[b]ecause of the nature of the payment." (ADS App. at 101).

ADS argues that "[t]he methodology used and the assumptions employed by Mr. Lynch clearly did not meet the standards for expert testimony established by *Daubert* ..." (ADS Mem. at 5). In response, Kent maintains that the damages suggested by Lynch represent a reasonable "lump-sum" royalty payment that KDS could have demanded in addition to a running royalty. *See Studiengesellschaft Kohle. m.b.H. v. Dart Industries, Inc.,* 862 F.2d 1564, 1568 (Fed.Cir.1988), *citing Stickle v. Heublein, Inc.,* 716 F.2d 1550, 1561- 63 (Fed.Cir.1983). Although "lump-sum" payments may be used to calculate a reasonable royalty, there is no evidence that any of the $10.3 million in fees paid to ADSI qualified as such. In fact, Lynch eschewed any analogy to a "lump sum paid-up royalty," instead referring to his 50 percent figure as a "sharing ratio" or "forced sharing." (*Id.* at 76, 84-85, 101, 107).

**\*7** Moreover, Lynch's damages figure was derived

Case 1:07-cv-00138-JJF    Document 17-2    Filed 05/03/2007    Page 9 of 13    Page 8

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1489555 (N.D.Tex.)
**(Cite as: 2002 WL 1489555 (N.D.Tex.))**

from two faulty premises. The first was that ADSI's licensing arrangements were relevant to the calculation of what *KDS* would have demanded in a hypothetical negotiation between the parties. (*Id.* at 137-138). *See Leesona Corp. v. United States,* 220 Ct.Cl. 234, 599 F.2d 958, 969 (Ct.Cl.), *cert. denied,* 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979) ("The proper measure [of damages] is what the [patent] owner has lost, not what the taker has gained."). A hypothetical royalty cannot be based on something that the patentee itself never insisted upon. *See Dow Chemical Co. v. United States,* 226 F.3d 1334, 1348 (Fed.Cir.2000). The second shortcoming in Lynch's analysis was his reliance on Victor Zhou's deposition. According to Lynch, this deposition:

played a great role in looking at what a forced sharing should be, in my opinion, because it was--the way the deposition read, and I'm speaking particularly of the '97 deposition that I read, shows that there was a copying and photographing and a taking.

So if I assume that what I am being told is right about the basis and the alleged infringement of the West patent, it influenced what percentage sharing between a patent holder and an alleged infringer that I came to. And, in fact, I have never come to a ratio this high for sharing, nor did I ever expect I would, but I have never seen circumstances quite like I've seen in this case.

(ADS App. at 107). Assuming *arguendo* that Lynch's "sharing ratio" constitutes a royalty, that figure was based on what the parties might have negotiated had they known the facts that had come to light *by the time of trial.* (*See id.* at 112, 137) (testifying that "the payment for the two million really comes from subsequent things that happened" and that "[b]ased on what we know today," parties "should have agreed" to a forced sharing. However, "[a] reasonable royalty determination for purposes of making a damages evaluation must relate to *the time infringement occurred,* and not be an after-the-fact assessment." *Unisplay, S .A. v. American Electronic Sign Co.,* 69 F.3d 512, 518 (Fed.Cir.1995) (emphasis added). Lynch's opinion testimony, formulated with the wisdom of 20-20 hindsight, violated this cardinal rule. *See id .*

Kent counters that the $1.5 million jury verdict can be upheld even without Lynch's testimony based on ADSI's license agreements and a 1994 business plan projecting millions of dollars in anticipated sales. As previously noted, the license agreements are not relevant to the calculation of damages. Moreover, the only evidence linking these agreements or the ADSI business plan to a hypothetical royalty was Lynch's testimony. The documents themselves cannot support the jury award in a vacuum. *See Unisplay, S.A.,* 69 F.3d at 518-19.

For these reasons, the evidence is insufficient to support an award of compensatory damages in excess of $44,037. The court will reform the verdict accordingly.

### D.

**\*8** Kent also seeks enhanced damages under section 284 of the Patent Act. This statute authorizes the court to "increase the amount of damages up to three times the amount found or assessed." 35 U.S.C. § 284. The determination whether to award such damages involves a two-step process. First, there must be a factual determination that the infringer has engaged in conduct warranting an award of enhanced damages. *Jurgens v. CBK, Ltd.,* 80 F.3d 1566, 1570 (Fed.Cir.1996); *Read Corp. v. Portec, Inc.,* 970 F.2d 816, 826 (Fed.Cir.1992). A finding of willful infringement, such as was rendered in this case, is sufficient to meet the first prong of the test. *Jurgens,* 80 F.3d at 1570. Next, the court must determine whether and to what extent to increase damages. *Id.; Read Corp.,* 970 F.2d at 826. Factors relevant to this decision include:

(1) whether the infringer deliberately copied the ideas or design of another, (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed, (3) the infringer's behavior as a party to the litigation, (4) the infringer's size and financial condition, (5) the closeness of the case, (6) the duration of the infringer's misconduct, (7) any remedial action by the infringer, (8) the infringer's motivation for harm, and (9) whether the infringer attempted to conceal its misconduct. *Johns Hopkins University v. CellPro, Inc.,* 152 F.3d

Not Reported in F.Supp.2d                                                    Page 9
Not Reported in F.Supp.2d, 2002 WL 1489555 (N.D.Tex.)
**(Cite as: 2002 WL 1489555 (N.D.Tex.))**

1342, 1352, n. 16 (Fed.Cir.1998), *citing* Read Corp., 970 F.2d at 827. Although the court has discretion in making this determination, it must articulate reasons for not enhancing a damage award where there has been a finding of willful infringement. *Tate Access Floors, Inc. v. Maxcess Technologies, Inc.,* 222 F.3d 958, 972 (Fed.Cir.2000); *Jurgens,* 80 F.3d at 1572.

[7] Despite the findings of willful infringement and willful inducement of infringement, ADS argues that damages should not be enhanced because it mounted a good faith challenge to the West patent based on the opinions of counsel and a prior jury verdict in its favor. As to the first argument, the jury was specifically instructed to consider whether ADSI and Wu relied in good faith on the opinions of counsel in determining the issue of willfulness. (Jury Charge at 33-34.) [FN6] Given the resolution of this issue in light of these instructions, the court will not disturb the implicit finding that ADS did not rely on competent legal advice in acting as it did. *Jurgens,* 80 F.3d at 1572.

> FN6. The jury instruction read, in pertinent part:
> The affirmative duty of care normally entails obtaining advice of legal counsel, although the absence of such advice does not mandate a finding of willfulness. Exercising due care, ADS may continue the accused infringement without risk of being found on that basis alone a willful infringer, if in good faith it believes it had a legitimate defense ...
> In deciding whether ADS and Wu had a reasonable basis for reaching a good faith conclusion that they could act as they did, you may consider whether ADS and Wu received and relied upon an opinion of counsel, and whether or not that opinion was competent ...
> (Jury Charge at 33-34.) The jury was also instructed that oral opinions could be accorded less weight than written ones and that any opinion was not relevant unless ADSI and Wu specifically relied on it in acting as they did. (*Id.* at 34).

Nor could ADS have justifiably relied on the prior jury verdict. Any such reliance was tainted by the improper litigation tactics used to secure that verdict. Indeed, the gross misconduct of ADS and its former counsel in this litigation is the overriding factor militating in favor of a full award of enhanced damages. These tactics, which were soundly condemned by the Federal Circuit, need not be reiterated in this opinion. *See Advanced Display Systems,* 212 F.3d at 1276-80, 1285-86, 1288-89. Suffice it to say that the actions of ADS and its former counsel in covering up knowledge of potentially relevant evidence were sufficiently egregious to warrant the imposition of treble damages. *See Read,* 970 F.2d at 827, 831 (bad faith in conduct of litigation may be considered in assessing degree of culpability of infringer once willfulness is found). The court will treble the amount of actual damages legally recoverable and award KDS enhanced damages in the sum of $132,219.

E.

*9 As part of its motion, Kent seeks pre-judgment interest on all compensatory damages awarded by the jury and post-judgment interest on all sums provided in the judgment. ADS concedes that Kent is entitled to post-judgment interest. Such interest is due on "any money judgment in a civil case," including punitive damages. 28 U.S.C. § 1961(a); *see also Brown v. Petrolite Corp.,* 965 F.2d 38, 51 (5th Cir.1992).

[8][9] However, ADS opposes any award of prejudgment interest because the jury was asked to determine "[w]hat amount of money, *if paid now in cash,* would represent a reasonable royalty adequate to compensate KDS for such infringement or inducement of infringement." (Jury Charge at 49) (emphasis added). This argument is rendered moot by virtue of the fact that the court has reformed the verdict to award damages based only on a reasonable royalty for infringing sales. There is absolutely no evidence that these royalties, totaling $44,073, include prejudgment interest. Therefore, KDS is entitled to interest on this sum "to ensure that [it] is placed in as good a position as [it] would have been had the infringer entered into a reasonable royalty agreement." *Electro Scientific Industries, Inc. v. Electro Scanning, Inc.,* 247 F.3d 1341, 1354 (Fed.Cir.2001). [FN7] Pre-judgment interest will be awarded at the average prime rate from September 26, 1995, the date

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the West patent issued and the infringement commenced, until the date of judgment. *See Lam, Inc. v. Johns-Manville Corp., 718 F.2d 1056, 1066 (Fed.Cir.1983)* (district court properly exercised discretion in awarding interest at prime rate where patent holder was shown to have borrowed money at or above prime rate).

> FN7. Pre-judgment interest is not recoverable on the award of enhanced damages. *Lam, Inc. v. Johns-Manville Corp., 718 F.2d 1056, 1066 (Fed.Cir.1983).*

### F.

[10] The jury found that Wu willfully induced infringement of the West patent. (Jury Charge at 47-48). Consequently, he is jointly and severally liable for compensatory and enhanced damages. *See Crystal Semiconductor Corp. v. TriTech Microelectronics International, Inc., 246 F.3d 1336, 1361 (Fed.Cir.2001).* Wu's argument that any jury award against him is precluded by the mandate rule has been raised previously and rejected by the court.

### G.

The remaining issues involve the scope of injunctive or declaratory relief in this case. ADS recognizes that, based on the jury's verdict, Kent is entitled to a permanent injunction and a declaratory judgment. However, ADS maintains that any injunction must be limited to the accused devices and any other products or methods that "use cholesteric liquid crystals with a pitch length that reflects visible color." (ADS Mem. at 27). ADS further contends that the West patent should be declared valid and enforceable only with respect to those defenses that were actually litigated at trial.

### 1.

Injunctions in patent cases are subject to the requirements of Rule 65(d) of the Federal Rules of Civil Procedure. This rule provides:

> Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties

to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

**\*10** Fed. R. Civ. P. 65(d); *see also KSM Fastening Systems, Inc. v. H.A. Jones Co., 776 F.2d 1522, 1525 (Fed.Cir.1985)* A permanent injunction must be sufficiently specific to provide adequate notice of the conduct enjoined. *Signtech USA, Ltd. v. Vutek, Inc., 174 F.3d 1352, 1359 (Fed.Cir.1999),* citing *Additive Controls & Measurement Systems Inc. v. Flowdata Inc., 986 F.2d 476, 479-80 (Fed.Cir.1993).*

[11] ADS argues that the injunction must include language limiting its scope to the accused devices and any other products or methods that "use cholesteric liquid crystals with a pitch length that reflects visible color." (ADS Mem. at 27). Without this language, ADS fears that it may be subject to contempt for selling a new "Black and White" cholesteric liquid crystal display product that is similar to the patented invention but does not reflect color in the visible spectrum. The court appreciates this concern. However, it is beyond the scope of this proceeding to determine whether this new ADS product infringes the West patent. [FN8] Nor does the language requested by ADS make the injunction any more specific or less vague. The patent, as construed by the court, says what it says. The injunction will refer to the claims of the West patent and prohibit any further infringement by ADS. This satisfies the specificity requirements of Rule 65(d). *See KSM Fastening Systems, 776 F.2d at 1526* (permanent injunction in a patent case enjoins the making, use, or sale both of devices actually found to infringe as well as any other devices that are no more than colorably different from the infringing products).

> FN8. The parties dispute whether "white" is a color in the visible spectrum covered by the West patent. Clearly, this issue cannot be resolved on the basis of letter briefs.

### 2.

[12] ADS also wants to limit the scope of declaratory relief to those defenses that were actually considered and rejected by the jury. Such a declaration would

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

provide that the West patent is "not invalid for obviousness, for failure to name the correct inventors, for failure to contain a sufficient written description, for failure to disclose the best mode, and for failure to obtain an enabling disclosure." (ADS Prop. Jmt. at 2). However, there is no sound reason for the court to enter a declaratory judgment leaving open the possibility that the West patent may be invalid on some other ground. A patent is entitled to a presumption of validity until it is adjudged invalid. 35 U.S.C. § 282; *North American Vaccine,* 7 F.3d at 1579. All the invalidity defenses raised by ADS have been rejected by either the court or the jury. [FN9] To the extent that any other defenses exist, ADS is precluded from litigating them under the doctrine of collateral estoppel. *See Pall Corp. v. Fisher Scientific Co.,* 962 F.Supp. 210, 213 (D.Mass.1997), *citing Zip Dee, Inc. v. Dometic Corp.,* 905 F.Supp. 535, 537-38 (N.D.Ill.1995). Accordingly, Kent is entitled to a declaration that the West patent is valid and enforceable in all respects.

> FN9. The court has determined that West patent is not invalid by anticipation or indefiniteness. *See* ORDERS, 12/3/01 & 12/4/01; *supra* at § III-A. The jury rejected the defenses of obviousness, inequitable conduct, failure to name all inventors, failure to adequately describe the patented invention, failure to meet the enablement requirement, and failure to disclose the best mode for practicing the invention. (Jury Charge at 38-43).

## CONCLUSION

Kent's motion for entry of judgment and ADS's motion for judgment as a matter of law or, alternatively, for new trial are granted in part and denied in part. The court will enter judgment as follows:

**\*11** 1. KDS shall have and recover actual damages against ADSI and Wu, jointly and severally, in the amount of $44,073, together with pre-judgment interest at the average prime rate from September 26, 1995 until the date of judgment, and post-judgment interest at the legal rate until paid;

2. KDS shall have and recover enhanced damages

against ADSI and Wu, jointly and severally, in the amount of $132,219, together with post-judgment interest at the legal rate from the date of judgment until paid;

3. ADSI and Wu, along with their officers, agents, servants, employees, attorneys, successors in interest and assigns, and any persons, corporations, organizations, or entities in active concert or participation with them who receive actual notice of this injunction by personal service or otherwise, are hereby permanently enjoined and restrained from directly or indirectly making, using, selling, offering for sale in the United States or importing into the United States, and from causing to be made, used, sold, or offered for sale in the United States or imported into the United States, any devices or methods that may infringe claims 1-8 and 10 of the West patent, including, without limitation, any of the 22 devices accused in this action, and from offering or advertising so to do, and from otherwise in any way infringing or inducing, aiding and abetting, or contributing to the infringement of any claim of the West patent;

4. Claims 1-8 and 10 of the West patent are valid and enforceable in all respects; and

5. All costs of court are taxed against ADSI and Wu, jointly and severally.

The parties are directed to confer on a form of proposed judgment, including the calculation of pre-judgment and post-judgment interest. A proposed final judgment must be hand delivered to the chambers of the magistrate judge by *July 19, 2002* . The judgment must be approved as to form by all counsel of record.

The court determines that this is an exceptional case warranting an award of reasonable attorney's fees to Kent as the prevailing party. *See* 35 U.S.C. § 285. The Supreme Court has admonished that "[a] request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). Ideally, the parties should be able to stipulate to a reasonable fee. *Id.,* 103 S.Ct. at 1941. With this admonishment in mind, counsel are directed to confer on the amount

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 12
Not Reported in F.Supp.2d, 2002 WL 1489555 (N.D.Tex.)
**(Cite as: 2002 WL 1489555 (N.D.Tex.))**

of attorney's fees and costs to be awarded in this case. If agreement cannot be reached, Kent shall file an application for attorney's fees and costs by *August 5, 2002*. The fee application must be supported by detailed and itemized records of the time spent and services performed by each attorney, the hourly rate charged for each service, and the costs incurred in connection with this case. Any fees awarded must be proportionate to the amount of the judgment and the results obtained on behalf of the client. In addition, counsel must exercise appropriate billing judgment in writing-off any excessive, redundant, or otherwise unnecessary time. Kent is directed to keep these and the other *Johnson* factors in mind when preparing its fee request.

**\*12** SO ORDERED.

\* \* \*

Not Reported in F.Supp.2d, 2002 WL 1489555 (N.D.Tex.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**2**

Westlaw.

Slip Copy                                                                      Page 1
Slip Copy, 2007 WL 541428 (E.D.Tex.)
**(Cite as: 2007 WL 541428 (E.D.Tex.))**

Only the Westlaw citation is currently available.

United States District Court,

E.D. Texas,

Marshall Division.

LEAP WIRELESS INTERNATIONAL, INC. and

Cricket Communications, Inc., Plaintiffs,

v.

METROPCS COMMUNICATIONS, INC., Defend-

ant/Counterclaim Plaintiff,

v.

Leap Wireless International, Inc., et al., Counterclaim

Defendants.

**Civil Action No. 2:06-CV-240 (TJW).**

Feb. 15, 2007.

William Christopher Carmody, Susman Godfrey
LLP, Dallas, TX, Andrew Wesley Spangler, Eliza-
beth L. Derieux, Sidney Calvin Capshaw, III, Brown
McCarroll, Longview, TX, Brooke Ashley-May
Taylor, John M. Neukom, Susman Godfrey, LLP,
Seattle, WA, Charles Ainsworth, Robert Christopher
Bunt, Robert M. Parker, Parker Bunt & Ainsworth,
Otis W. Carroll, Jr., Ireland Carroll & Kelley, Tyler,
TX, Franklin Jones, Jr., Jones & Jones, Marshall, TX,
Max Lalon Tribble, Jr., Susman Godfrey LLP, Hous-
ton, TX, for Plaintiffs.

Robert Martin Chiaviello, Jr., Brett Christopher Gov-
ett, Fulbright & Jaworski, Michael Joseph Fogarty,
III, Slater & Matsil, L.L.P., Dallas, TX, Eric M. Al-
britton, Attorney at Law, Longview, TX, Harry Lee
Gillam, Jr., Gillam & Smith, LLP, Marshall, TX,
William David Carter, Sr., Mercy Carter Tidwell,
L.L.P., Texarkana, TX, for Defendant/Counterclaim
Plaintiff.

Brian A. Coleman, Joseph R. Delmaster, Jr., Drinker
Biddle & Reath, Washington, DC, Michael Charles
Smith, Carl R. Roth, The Roth Law Firm, Marshall,
TX, William Christopher Carmody, Susman Godfrey
LLP, Barry Frank McNeil, Sarah Rae/Brandt
Teachout, Haynes and Boone, Dallas, TX, Frank E.
Rogozienski, Attorney at Law, San Diego, CA, for
Counterclaim Defendants.

***MEMORANDUM ORDER***

T. JOHN WARD, United States District Judge.

**\*1** Before the Court are Third Party Defendants
Thomas Bernard and Harvey White's Motions to Dis-
miss (# 39 and # 40, respectively). After reviewing
the parties' briefs and applicable case law, the Court
DENIES the motions for the reasons set forth below.

**I. Introduction**

Plaintiffs Leap Wireless International, Inc. [FN1]
("Leap") and Cricket Communications, Inc. filed this
lawsuit against MetroPCS Communications, Inc.
("MetroPCS") for infringement of U.S. Patent No.
6,813,497 ("the '497 patent") entitled "Method for
Providing Wireless Communication Services and
Network and System for Delivering Same." Met-
roPCS subsequently filed a third-party complaint
against numerous third-party defendants, including
Thomas Bernard ("Bernard") and Harvey White
("White"). In its third-party complaint, MetroPCS al-
leges that Bernard and White, former senior officers
at Qualcomm Inc. ("Qualcomm") [FN2], misappro-
priated confidential information and trade secrets in
order to obtain patents, including the patent-in-suit,
for Leap. Bernard and White now move to dismiss
MetroPCS's third-party complaint against them pur-
suant to Fed.R.Civ.P. 12(b)(2) for lack of personal
jurisdiction or, in the alternative, for improper venue
pursuant to Fed.R.Civ.P. 12(b)(3).

> FN1. Leap Wireless International, Inc. was
> formed by Qualcomm Inc. and later spun off
> as its own independent company.

> FN2. During the time at issue in these
> claims, Bernard was Senior Vice President
> and General Manager of the Infrastructure
> Division at Qualcomm, and White was Pres-
> ident, Chief Executive Officer, and Board
> Vice Chairman of Qualcomm. Bernard and
> White later became founding members of
> Leap. White eventually became the Chief
> Executive Officer of Leap.

**II. Discussion**

**A. Personal Jurisdiction**

A federal court may exercise personal jurisdiction over a nonresident defendant to the extent permitted by the applicable state law. *See* Fed.R.Civ.P. 4(e)(1). In this action, the Texas long-arm statute allows for the exercise of personal jurisdiction to the extent allowed by the Due Process Clause of the Fourteenth Amendment. *See* Tex. Civ. Prac. & Rem.Code Ann. § 17 .042; *Alpine View Co. v. Atlas Copco AB,* 205 F.3d 208, 214 (5th Cir.2000).

In the exercise of personal jurisdiction over a nonresident defendant, due process requires that 1) the defendant purposefully avail himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and 2) the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *Felch v. Transportes Lar-Mex,* 92 F.3d 320, 323 (5th Cir.1996); *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). "Minimum contacts" can be established through specific or general jurisdiction. [FN3] *Alpine View Co.,* 205 F.3d at 215.

> FN3. MetroPCS does not contend that Bernard or White's contacts are sufficient to support general jurisdiction. The Court's analysis, therefore, will focus on specific jurisdiction.

Specific jurisdiction exists if the nonresident defendant "purposefully direct [s][his] activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Id.* (quoting *Burger King Corp. v. Rudzewick,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). When specific jurisdiction is asserted, the minimum contacts analysis focuses on the relationship between the nonresident defendants, the forum state and the litigation. *See Guidry v. United States Tobacco Co., Inc.,* 188 F.3d 619, 624-25 (5th Cir.1999). The defendants' conduct and connections with the forum state must show that they "should reasonably anticipate being haled into court there." *Burger King Corp.,* 471 U.S. at 474 (quoting *World-Wide Volkswagen v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). The defendant, however, does not have to physically enter the state. *Cole v. Tobacco Inst.,* 47 F.Supp.2d 812, 815 (E.D.Tex.1999).

**\*2** The following three-part test is used when deciding whether there is specific jurisdiction:

> (1) Did the defendant have minimum contacts with the forum state-purposely directing its activities toward the forum state or purposely availing itself of the privilege of conducting activities therein? (2) Did the plaintiff's cause of action arise out of or result from the defendant's forum-related contacts? (3) Would the exercise of personal jurisdiction be reasonable and fair? *Guidry,* 188 F.3d at 625 (citation omitted).

In addressing the third prong of the test, the defendants "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* at 630 (citations omitted). The following areas are normally examined when making a determination of fairness: 1) the defendant's burden, 2) the forum state's interests, 3) the plaintiff's interest in convenient and effective relief, 4) judicial system's interest in efficient resolution of controversies, and 5) the shared interest of several states in furthering fundamental social policies. *Id.* at 630 (citations omitted).

When the Court decides a motion to dismiss without holding an evidentiary hearing, the plaintiff only needs to make a *prima facie* showing of the facts on which jurisdiction is predicated. *Alpine View Co.,* 205 F.3d at 215. In deciding whether a *prima facie* case exists, the Court must accept as true the plaintiff's "uncontroverted allegations, and resolve in [their] favor, all conflicts between the facts contained in the parties' affidavits and other documentation." *Id.*

**1. Thomas Bernard**

The first prong of the specific jurisdiction test is met with respect to Bernard because there is no dispute that he directed certain activities toward the State of Texas. These activities include phone calls to Texas, at least one meeting in Texas, and a "commitment letter" sent to General Wireless. [FN4]

> FN4. General Wireless was MetroPCS's predecessor.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The second prong of the test is in dispute. Bernard argues that his activities directed toward Texas relate only to Qualcomm's efforts to sell and finance infrastructure equipment to General Wireless and, therefore, do not give rise to the plaintiffs' cause of action. MetroPCS, however, alleges that during the phone calls to Texas and during the meeting in Texas, Bernard was given trade secret information which was later misappropriated. At this stage, any conflict must be construed in favor of MetroPCS. Accordingly, the *prima facie* evidence indicates that MetroPCS's cause of action for misappropriation of trade secrets arose, in part, out of Bernard's contacts with the State of Texas.

The court now turns to the third prong of the test to see if the exercise of personal jurisdiction would be reasonable and fair. Bernard argues that he is now retired and that traveling to Texas would be unduly burdensome and expensive. MetroPCS, on the other hand, argues that Bernard is a key witness in the case and may be called to testify at trial. At this stage, the Court must resolve the conflict in favor of MetroPCS and, therefore, agrees with MetroPCS that Bernard would not be unduly or unreasonably burdened. The parties do not dispute that the State of Texas has a substantial interest in this litigation because Bernard is alleged to have committed tortious acts directed at the State of Texas. It is also clear that MetroPCS has a strong interest in the convenient and effective relief of this lawsuit. The judicial system also shares an interest in the resolution of all controversies in this case, including the original complaint of patent infringement suit and the third-party complaint for misappropriation of trade secrets which are closely aligned with each other. In summary, the Court finds that the exercise of personal jurisdiction over Bernard would be fair and reasonable.

**\*3** MetroPCS has established a *prima facie* case for this Court to exercise personal jurisdiction over Bernard. Accordingly, Bernard's motion to dismiss for lack of personal jurisdiction is denied.

**2. Harvey White**

The court now turns to the first prong of the specific jurisdiction test as it applies to White. White argues that he has never had any contact MetroPCS in Texas or its representatives in Texas while employed at Qualcomm or Leap, nor did he have any direct involvement with the efforts to sell infrastructure equipment to General Wireless. White, however, states that he may have met with some people at MetroPCS as part of a "grip and grin" or "meet and greet" situation. White also argues that MetroPCS has provided no evidence of telephone calls, correspondence, or personal visits with MetroPCS. MetroPCS, on the other hand, argues that White had several contacts and attended several meetings with representatives from MetroPCS where he obtained confidential information. MetroPCS further contends that White, as President and Chief Executive Officer of Qualcomm and Leap, was in a position to instruct other individuals to meet with MetroPCS's representatives in an effort to obtain trade secrets under the guise of trying to sell wireless equipment. At this stage, the Court must resolve the conflict between the affidavits offered by the parties in favor of MetroPCS and finds that White purposefully directed activities toward MetroPCS in the State of Texas.

The second prong of the test is also satisfied. As with Bernard, MetroPCS contends that, at the meetings with MetroPCS, White was given confidential and trade secret information which was later misappropriated.

As to the third prong of the test, White makes the same arguments as Bernard regarding the fairness and reasonableness of this Court exercising personal jurisdiction. The third prong is, therefore, satisfied as discussed above in Bernard's case.

MetroPCS has established a *prima facie* case for this Court to exercise personal jurisdiction over White. Accordingly, White's motion to dismiss for lack of personal jurisdiction is denied.

**B. Improper Venue**

Bernard and White also argue that this case should be dismissed because venue does not exist in this district as to them. MetroPCS, however, contends that venue is proper under the doctrine of ancillary venue. The doctrine of ancillary venue states that third-party de-

Slip Copy
Slip Copy, 2007 WL 541428 (E.D.Tex.)
**(Cite as: 2007 WL 541428 (E.D.Tex.))**

Page 4

fendants have no standing to raise a defense that venue is improper. *One Beacon Ins. Co. v. JNB Storage Trailer Rental Corp., 312 F.Supp.2d 824, 828 (E.D.Va.2004).* Ancillary venue applies to parties who are added in connection with compulsory counterclaims. 6 Charles Alan Wright, et al., Federal Practice and Procedure § 1436 (2d ed., current through 2006 update).

In their reply brief, Bernard and White argue that ancillary venue is not applicable because MetroPCS's counterclaim is not compulsory, but permissive. Therefore, the issue is whether MetroPCS's counterclaim is compulsory or permissive.

**\*4** A compulsory counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed.R.Civ.P. 13(a). The appropriate inquiry in determining whether a counterclaim is compulsory is to ask:

> 1) whether the issues of fact and law raised by the claim and counterclaim largely are the same; 2) whether *res judicata* would bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule; 3) whether substantially the same evidence will support or refute plaintiff's claim as well as defendant's counterclaim; and 4) whether there is any logical relationship between the claim and the counterclaim. *Park Club, Inc. v. Resolution Trust Corp., 967 F.2d 1053, 1058 (5th Cir.1992)* (citation omitted).

The counterclaim is compulsory if there is an affirmative answer to any of the four questions. *Id.*

In this case, the original claim involves patent infringement and the counterclaim involves misappropriation of trade secrets. According to Bernard and White, these are two completely different "transactions or occurrences" because the patent infringement involves the defendants' alleged infringing activities while the misappropriation of trade secrets involves the third-party defendants' conduct prior to the issuance of the patent. MetroPCS, on the other hand, argues that its declaratory judgment is compulsory because its declaratory judgment of invalidity of the '497 patent is based on trade secret misappropriation by Bernard, White, and others. MetroPCS also seeks damages for the misappropriation of trade secrets that resulted in

the '497 patent.

The Court agrees with MetroPCS that its counterclaim against Bernard and White is compulsory. [FN5] First, a logical relationship exists between a declaratory judgment of invalidity and the original patent infringement claims when they involve the same patent-in-suit. *See Akzona Inc. v. E.I. du Pont de Nemours & Co., 662 F.Supp. 603, 618 (D.Del.1987)* (stating that a declaratory judgment action and counterclaim for infringement involving the same patents are both seeking to define the scope and determine the validity of those patents); *Texas Instruments Inc. v. Micron Semiconductor, 815 F.Supp. 994, 997 n. 4 (E.D.Tex.1993)* (stating that a claim for infringement is a compulsory counterclaim to a declaratory judgment action involving the same patents). Here, Leap contends that MetroPCS infringes the '497 patent. MetroPCS counterclaims that the '497 patent is invalid based on misappropriation of trade secrets by Bernard, White and others. These two claims involve the scope and validity of the patent-in-suit and are, therefore, logically related to each other.

> FN5. MetroPCS also points out that Bernard and White's position in this case is contrary to its position in a pending California state case involving the same parties. In arguing for a motion to stay in the California state case, Bernard and White state that the misappropriation of trade secrets in this case are compulsory counterclaims to the patent infringement claims. *See* MetroPCS's Sur-Reply, Exh. A. There is no need to address MetroPCS's argument that the doctrine of collateral estoppel applies because the Court agrees with MetroPCS that its counterclaim for misappropriation of trade secrets is compulsory.

Second, a claim for misappropriation of trade secrets may be a compulsory counterclaim to a claim for patent infringement when the two claims involve many of the same parties, the same underlying design concept, and much of the same evidence and course of conduct. *See Mopex, Inc. v. American Stock Exchange, LLC, 2002 WL 342522, \*6-7 (S.D.N.Y.*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 541428 (E.D.Tex.)
**(Cite as: 2007 WL 541428 (E.D.Tex.))**

March 5, 2002). Here, MetroPCS's counterclaim for misappropriation of trade secrets involves Leap and its officers at the time of the misappropriation. It also involves the same underlying design concept as the patent-insuit. The Court, therefore, finds a logical relationship between the Leap's original claim for patent infringement and MetroPCS's counterclaim for misappropriation of trade secrets.

**\*5** Because the Court finds that MetroPCS's counterclaim is compulsory, the doctrine of ancillary venue applies in this case. Accordingly, Bernard and White, as third-party defendants, do not have standing to raise an improper venue defense, and their motions to dismiss for improper venue are denied.

### III. Summary

Based on the evidence at this stage of the case, the Court finds that Bernard and White purposefully directed activities to the State of Texas. Accordingly, this Court has personal jurisdiction over Bernard and White. The Court further finds that the doctrine of ancillary venue applies to MetroPCS's counterclaims. Accordingly, the Eastern District of Texas, Marshall Division, is the appropriate venue for MetroPCS's claims against Bernard and White. Bernard and White's motions to dismiss are DENIED.

Slip Copy, 2007 WL 541428 (E.D.Tex.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**3**

Not Reported in F.Supp.2d                                                                                         Page 1
Not Reported in F.Supp.2d, 2000 WL 631324 (N.D.Ill.)
**(Cite as: 2000 WL 631324 (N.D.Ill.))**

**H**

Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois, Eastern
Division.
UNIQUE COUPONS, INC., Plaintiff,
v.
NORTHFIELD CORPORATION, Defendant.
**No. 99 C 7445.**

May 16, 2000.

*MEMORANDUM OPINION AND ORDER*
LEINENWEBER, J.

**\*1** This is a patent infringement action brought by
Unique Coupons, Inc. ("Unique") against Northfield
Corporation ("Northfield"). Before the Court is
Unique's motion to dismiss Northfield's counter-
claims, pursuant to Fed.R.Civ.P. 12(b)(6).

*BACKGROUND*
The underlying action involves Unique's contention
that Northfield's Model 3200 coupon inserter in-
fringes two of Unique's patents, No. 5,079,901 ("the
'901 patent") and No. 5,588,280 ("the '280 patent").
Northfield now brings eight counterclaims against
Unique, chiefly based on alleged representations
made by Unique to Northfield's customers that the
Model 3200 infringes its patents and that Unique
would sue anyone who bought or used the Model
3200. (Counterclaims, ¶¶ 16, 18). More specifically,
Northfield alleges, via responsive brief, that Unique
made public statements claiming Northfield is violat-
ing an earlier injunction won by Unique as to North-
field's Model 1600 coupon inserter, and that the Mod-
el 3200 is subject to that earlier injunction. (Def.
Resp. at 7, n. 1). Unique seeks to dismiss all of
Northfield's counterclaims.

*DISCUSSION*
The purpose of a motion to dismiss is to test the suffi-
ciency of the complaint, not to decide its merits. *See*
*Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th
Cir.1990). As such, the court accepts the factual al-
legations of the complaint as true and draws all reas-
onable inferences in favor of the claimant. *See Travel*

*All Over The World v. Kingdom of Saudi Arabia,* 73
F.3d 1423, 1428 (7th Cir.1996). A claim will be dis-
missed if it is beyond doubt that under no set of facts
would the claimant's allegations entitle him to relief.
*Id.* at 1429-30. In accordance with these standards,
Unique's motion to dismiss is granted in part and
denied in part.

Count I
In Count I of Northfield's counterclaims, Northfield
seeks a declaration of invalidity and non-in-
fringement as to four U.S. patents owned by Unique:
No. 5,079,901 ("the '901 patent"), No. 5,588,280
("the '280 patent"), No. 5,784,861 ("the '861 patent"),
and No. 5,941,053 ("the '053 patent"). Insofar as
Count I seeks a declaration of invalidity and unen-
forceability of the '901 and '280 patents, that claim is
dismissed because the exact issue was previously lit-
igated and resolved in favor of Unique in a prior litig-
ation between the same parties. *See Northlake Mar-
keting & Supply, Inc. v. Glaverbel, S.A.,* 986 F.Supp.
471, 475 (N.D.Ill.1997) (setting forth the elements of
issue preclusion). During the course of an earlier lit-
igation between Unique and Northfield regarding
Northfield's Model 1600 coupon inserter, Judge
Marovich clearly held the '901 and '280 patents to be
valid and enforceable. (Marovich Mem. Op. and Or-
der at 14). Therefore, the issue of invalidity and en-
forceability of the '901 patent and the '280 patent can-
not be re-litigated here, regardless of the fact that this
case is about the Model 3200. *See Zip Dee, Inc. v.
Dometic Corp.,* 905 F.Supp. 535 (N.D.Ill.1995)
(barring re-litigation of the issue of invalidity of a
patent in a subsequent action even though defendant
offers rationales not offered during the previous
case).

**\*2** Count I as to the '861 patent and the '053 patent-
-the patents that were not at issue in the earlier litiga-
tion--is also dismissed for lack of subject matter jur-
isdiction. A district court has jurisdiction over a de-
claratory judgment action if, ultimately, the party
seeking declaratory judgment demonstrates an object-
ively reasonable apprehension of being hauled into
court. *BP Chemicals Ltd. v. Union Carbide Corp.,* 4
F.3d 975, 979 (Fed.Cir.1993).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 631324 (N.D.Ill.)
**(Cite as: 2000 WL 631324 (N.D.Ill.))**

In this case, the only basis for Northfield's belief that it will be sued over the '861 and '053 patents is Unique's "piecemeal" litigation history with respect to the '901 and '280 patents. (Def. Resp. at 5.) But that is not enough. Northfield fails to explain how the '861 and '053 patents relate at all to the '901 and '280 patents, the issues in this litigation, or the issues in the prior "piecemeal" litigations. Therefore, without a showing of an objectively reasonable apprehension on the part of Northfield, Count I as to the '861 patent and '053 patent must be dismissed.

Scope of the Allegations
In Counts II through VIII, Northfield alleges a variety of federal and state unfair trade practices. These claims are based on Unique's allegedly false statements that the Model 3200 infringed Unique's patents. In response to Unique's motion to dismiss, Northfield further claims that Unique made public statements to the effect that Northfield is violating a permanent injunction issued in a prior action regarding Northfield's Model 1600 coupon inserter, and that the Model 3200 is subject to that prior injunction. (Def. Resp. at 7, n. 1).

As an initial matter, the Court finds that Northfield's additional allegations made in its responsive brief can be considered in addressing this motion to dismiss. A claimant need not put all of the essential facts in his or her complaint. *Hentosh v. Herman M. Finch University of Health Sciences,* 167 F.3d 1170, 1173 n. 3 (7th Cir.1999). The claimant may add them by affidavit or brief in order to defeat a motion to dismiss if such facts are consistent with the allegations in the complaint. *Id.* Here, because Northfield's additional allegations offered in response to the motion to dismiss comport with the allegations initially made in the counterclaims, they will be considered in deciding this motion to dismiss.

Noerr-Pennington Doctrine
Taking into account the additional allegations contained in Northfield's responsive pleading, the Court finds that Unique cannot rely upon the Noerr-Pennington doctrine to dispose summarily the rest of Northfield's counterclaims. The Noerr-Pennington doctrine, first recognized in the context of federal antitrust cases, grants a party immunity from various

federal, state, or common law unfair trade practices actions based on that party's solicitation of governmental action, including the initiation of lawsuits. *See Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127 (1961); *United Mine Workers v. Pennington,* 381 U.S. 657 (1965). Some courts have extended this doctrine to immunize activity merely incident to or attendant upon the right to initiate litigation, such as communications with potential parties and third-parties. *See, e.g., Coastal States Marketing, Inc. v. Hunt,* 694 F.2d 1358 (5th Cir.1983). Recently, however, the Tenth Circuit has cast serious doubt as to whether the doctrine can be extended to such pre-litigation publicity in contexts not implicating federal antitrust laws. *Cardtoons L.C. v. Major League Baseball Players Assoc.,* 208 F.3d 885, 2000 WL 358414, at *4 (10th Cir. April 7, 2000).

**\*3** Regardless of the ultimate implications of the relevant case law, however, the Court finds that Northfield's allegations can fairly be read to avoid triggering the Noerr-Pennington doctrine in the first place. According to Northfield's response to Unique's motion, Northfield's unfair trade practices claims are based upon Unique's alleged public statements that Northfield's Model 3200 was enjoined in the previous litigation between the parties. If that is the case, then Northfield does not seek to impose liability for any action incident to or attendant future litigation, but for misrepresentations as to the content and import of past litigation. Drawing all inferences and ambiguities in favor of the claimant, *Travel All Over the World, Inc.,* 73 F.3d at 1428, the Court cannot conclude at this juncture that the Noerr-Pennington doctrine, even if unambiguously applicable in these contexts, can shield Unique. Therefore, the Court will now examine the merits of the individual claims on their own terms.

Count II
Unique takes no issue with the merits of Count II, Northfield's counterclaim for unfair competition under the Lanham Act, 15 U.S.C. § 1125(a). Accordingly, Count II survives the motion to dismiss.

Counts III and VIII
In Count III, Northfield alleges that Unique's misrep-

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 631324 (N.D.Ill.)
**(Cite as: 2000 WL 631324 (N.D.Ill.))**

Page 3

resentations with respect to the Model 3200 disparage Northfield's product, and have caused or is likely to cause Northfield's customers to be deceived as to the nature, origin, and character of the Model 3200, all in violation of the Illinois Uniform Deceptive Trade Practices Act. 815 ILCS 510/2. Count VIII recites the same allegations but under common law. The parties appear to agree that the common law claim will fall or stand with the statutory claim. (*See, e.g.,* Def. Resp. at 8-9).

The Court finds that these claims are sufficiently pled. The Uniform Deceptive Trade Practices Act allows claims for both "misleading trade identification or deceptive advertising" as well as for disparagement of claimant's goods and services by false and misleading representations of fact. 815 ILCS 510/2(2) and (8); *see Lynch Ford, Inc. v. Ford Motor Co., Inc., 957 F.Supp. 142, 147 (N.D.Ill.1997).* Essentially, any conduct in a business which creates a likelihood of consumer confusion or misunderstanding is potentially actionable under the statute. *Unique Concepts, Inc. v. Manuel, 669 F.Supp. 185, 191 (N.D.Ill.1987).*

In this case, Northfield alleges that Unique represented to Northfield's customers that the Model 3200 was subject to the prior injunction; a statement, which, if proven, can be deemed a false statement designed to mislead the customers into believing that purchasing a Model 3200 would expose them to infringement liability. That is sufficient at this stage to survive a motion to dismiss.

### Count IV

Count IV purports to state a claim under Illinois's Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS 505/2, again based on Unique's representations regarding the Model 3200. Northfield's claim, however, must be dismissed pursuant to Federal Rule of Civil Procedure 9(b). Claims under the Consumer Fraud Act are subject to the heightened pleading standard under Rule 9(b). *Gallagher Corp. v. Massachusetts Mut. Life Ins. Co., 940 F.Supp. 176, 180 (N.D.Ill.1996).* Compliance with Rule 9(b) requires the allegation of the who, the what, the where and the when of the alleged fraud or misrepresentation. *See Goren v. New Vision International, Inc., 156 F.3d*

721, 730 (7th Cir.1998). Here, Northfield's allegations are too conclusory; there is no indication of who said what and when and how. Accordingly, the Consumer Fraud Act claim is dismissed.

### Count V

**\*4** In Count V, Northfield alleges tortious interference with business relationship based on the same statements regarding the Model 3200 coupon inserter. In order to state a claim for tortious interference, the claimant must show (1) a reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the claimant's expectancy; (3) purposeful interference by the accused that prevents the claimant's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference. *International Marketing, Ltd. v. Archer-Daniels-Midland Co., 192 F.3d 724, 731 (7th Cir.1999).*

In this case, Unique does not take issue with whether Northfield has met the elements, but rather asserts the privilege of competition. However, privilege is an affirmative defense. *Id.* And nothing on the face of the counterclaim so clearly indicates the existence of the defense that would warrant this Court to dismiss the claim without putting Unique to its proof. *Contrast Id.* In fact, Northfield has alleged that Unique's representations regarding the Model 3200 coupon inserter and the scope of the prior injunction was malicious and knowingly false. (Counterclaims, ¶¶ 16, 17); *Int'l Marketing, Ltd., 192 F.3d at 731* ("a competitor is ineligible for the competition defense if its conduct is motivated solely by spite or ill will"). That is enough to state a claim for tortious interference with business relationship.

### Count VI

Count VI is Northfield's claim for trade libel *per se* or, in the alternative, *per quod.* Under Illinois common law, statements are libelous *per se* if they constitute "a serious charge of incapacity or misconduct in words so obviously and naturally harmful that proof of their injurious character can be dispensed with." *Quilici v. Second Amendment Foundation, 769 F.2d 414 (7th Cir.1985).* Northfield's paraphrase of Unique's alleged statements, however, fails to state a cause of action for libel *per se.* Northfield claims that

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2000 WL 631324 (N.D.Ill.)
**(Cite as: 2000 WL 631324 (N.D.Ill.))**

Unique publicly represented that the Model 3200 is subject to the prior injunction. However, such statements can be innocently construed to mean that Northfield was mistaken about the scope of the prior injunction--not that Northfield purposefully or maliciously defied the prior injunction. *See Darvoec Marketing Group, Inc. v. Bio-Genics, Inc.,* 42 F.Supp.2d 810, 815 (N.D.Ill.1999) ("no cause of action [for libel *per se* ] will exist if the statement can also reasonably be given an innocent construction."). Therefore, without a showing that statements seriously impinge the integrity of Northfield as a business, its claim for libel *per se* is dismissed.

Northfield also does not state a claim for libel *per quod.* Statements are libelous *per quod* if they are found to be damaging by extrinsic facts or innuendo. *Audition Div., Ltd. v. Better Business Bureau, Inc.,* 120 Ill.App.3d 254 (1983). However, Northfield's counterclaim is devoid of allegations of special extrinsic facts that would render the alleged statements so libelous. Accordingly, Count VI is dismissed in its entirety.

### Count VII

**\*5** Finally, the Court finds that Northfield also fails to state a cause of action for commercial disparagement in Count VII. Statements are considered commercially disparaging if they (1) "accuse a businessman of outright dishonesty or reprehensible business methods in connection with his goods," or (2) disparage the quality of his goods or services. *Unique Concepts, Inc. v. Manuel,* 669 F.Supp. 185, 190 (N.D.Ill.1987). But as discussed above, a reasonable construction of Unique's alleged statements does not singularly point to a charge of reprehensible conduct. *See Id.* (dismissing claim for commercial disparagement where statements could be reasonably construed to mean something other than a charge of reprehensible conduct). Furthermore, Unique's alleged statements are about the source of the technology for the Model 3200 and do not go to disparaging the quality of the Model 3200. Accordingly, Count VII for commercial disparagement is dismissed.

### CONCLUSION

For the reasons stated above, Unique's motion to dismiss is GRANTED in part and DENIED in part.

Counts I, IV, VI, and VII of Northfield's counterclaims are dismissed. Counts II, III, V, and VIII of Northfield's counterclaims remain.

IT IS SO ORDERED.

Not Reported in F.Supp.2d, 2000 WL 631324 (N.D.Ill.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.