IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

PFIZER INC., PFIZER              :
PHARMACEUTICALS, LLC,            :
PFIZER LIMITED, C.P.             :
PHARMACEUTICALS INTERNATIONAL    :
C.V., PFIZER IRELAND             :
PHARMACEUTICALS, WARNER-         :
LAMBERT COMPANY, WARNER          :
LAMBERT COMPANY LLC, and         :
WARNER-LAMBERT EXPORT, LTD.,     :
                                 :
          Plaintiffs,            :
                                 :
     v.                          : Civil Action No. 07-138-JJF
                                 :
RANBAXY LABORATORIES LIMITED     :
and RANBAXY INC.,                :
                                 :
          Defendants.            :

---

Rudolf E. Hutz, Esquire; Jeffrey B. Bove, Esquire and Mary W. Bourke, Esquire of CONNOLY BOVE LODGE & HUTZ LLP, Wilmington, Delaware

Attorneys for Plaintiffs.

Darrell L. Olson, Esquire; Joseph M. Reisman, Esquire; William R. Zimmerman, Esquire, and Payson LeMeilleur, Esquire of KNOBBE, MARTENS, OLSON & BEAR, LLP, Irvine, California.
Frederick L. Cottrell, III, Esquire and Jameson A.L. Tweedie, Esquire of RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware.

Attorneys for Defendants.

---

**O P I N I O N**

November 29, 2007
Wilmington, Delaware

Joseph J. Farnan Jr.
Farnan District Judge.

Pending before the Court are two motions filed by Plaintiffs, Pfizer Inc., Pfizer Pharmaceuticals, LLC, Pfizer Limited, C.P. Pharmaceuticals International C.V., Pfizer Ireland Pharmaceuticals, Warner-Lambert Company, Warner-Lambert Company, LLC and Warner-Lambert Export, Ltd. (collectively, "Pfizer"): (1) a Motion To Dismiss In Part Declaratory Judgment Counterclaims (D.I. 14), and (2) a Motion To Dismiss And For Partial Judgment On The Pleadings Pursuant To Federal Rule Of Civil Procedure 12(c) (D.I. 16). For the reasons discussed, the Court will grant Pfizer's Motions.

## BACKGROUND

Pfizer brought this action against Defendants Ranbaxy Laboratories Limited and Ranbaxy Inc. ("Ranbaxy") alleging infringement of two patents owned by Pfizer, United States Patents Nos. 4,681,893 (the "'893 patent") and 6,455,574 (the "'574 patent"). The '893 patent claims a genus of chemical compounds which embraces atorvastatin calcium. Pfizer sells a formulation containing atorvastatin calcium under the registered name Lipitor®.

The '574 patent relates to "pharmaceutical combinations of amlodipine or a pharmaceutically acceptable acid additional salt thereof and atorvastatin or a pharmaceutically acceptable salt thereof, kits containing such combinations and methods of using

1

such combinations" to treat a variety of cardiac ailments. Pfizer sells a formulation containing amlodipine besylate under the registered name Norvasc®.

Both the '893 patent and the '574 patent are listed in the FDA's Orange Book as covering a product sold by Pfizer under the registered name Caduet®. Caduet® is essentially a product containing both amlodipine besylate and atorvastatin calcium.

In response, Ranbaxy filed an Amended Answer and Counterclaims. By its counterclaims, Ranbaxy seeks a declaratory judgment that (1) the '893 patent and its term extension are invalid, and (2) the '574 patent is invalid and not infringed. Ranbaxy has also interjected United States Patent No. 5,273,995 (the "'995 patent") into this lawsuit by asserting in its Fourth, Fifth, Sixth and Seventh Counterclaims that the '995 patent is invalid and/or unenforceable and not infringed.

Like the '893 patent, the '995 patent also pertains to the atorvastatin calcium pharmaceutical composition sold by Pfizer under the registered name Lipitor®. The Court of Appeals for the Federal Circuit has determined, in prior litigation between the parties (the "Lipitor® Litigation"), that Claim 6 of the '995 patent is invalid for failure to satisfy 35 U.S. § 112. Pfizer has sought to reissue the '995 patent to correct the defect in Claim 6 and to correct defects in other claims. Pfizer has also provided Ranbaxy with a covenant not to sue Ranbaxy on all

2

remaining claims of the original '995 patent.

## STANDARD OF REVIEW

### I.   Dismissal Under Fed. R. Civ. P. 12(b)(1)

Pursuant to Federal Rule of Civil Procedure 12(b)(1), the Court is authorized to dismiss a complaint, or in this case, a counterclaim, if the Court lacks subject matter jurisdiction over the claims alleged.  Motions brought under Rule 12(b)(1) may present either a facial or factual challenge to the Court's subject matter jurisdiction.

When a facial challenge to subject matter jurisdiction is raised, the Court must accept all factual allegations pled in the counterclaim as true and draw all reasonable inferences in favor of the counterclaim plaintiff.  The Court's inquiry under Rule 12(b)(1) is limited to the allegations in the counterclaim, the documents referenced in or attached to the counterclaim, and matters in the public record.  Gould Electronics Inc. v. U.S., 220 F.3d 169, 176 (3d Cir. 2000).  However, the Court may consider "document[s] integral to or explicitly relied upon in the complaint" without converting the motion to dismiss to a motion for summary judgment.  The Court may also consider exhibits to a motion to dismiss without converting the motion to a summary judgment motion, if the plaintiff's claims are based on the documents and the documents are undisputedly authentic. Pension Benefit Guaranty Corp. v. White Consolidated Indus.,

3

Inc., 998 F.2d 1192, 1196 (3d Cir.1993).

In reviewing a factual challenge to the Court's subject matter jurisdiction, the Court is not confined to the allegations of the complaint, or in this case the counterclaim, and the presumption of truthfulness does not attach to the allegations in the counterclaim. Mortensen v. First Fed. Sav. and Loan, 549 F.2d 884, 891 (3d Cir. 1977). Instead, the Court may consider evidence outside the pleadings, including affidavits, depositions and testimony, to resolve any factual issues bearing on jurisdiction. Gotha v. United States, 115 F.3d 176, 179 (3d Cir. 1997).

Pursuant to Rule 12(h)(3), subject matter jurisdiction may be raised at any time during the course of a case and may be raised sua sponte by the Court. Once the Court's subject matter jurisdiction over a counterclaim is challenged, the counterclaim plaintiff bears the burden of proving that jurisdiction exists. Mortensen, 549 F.2d at 891.

## II. Judgment On The Pleadings Under Fed. R. Civ. P. 12(c)

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is governed by the same standards that apply to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Specifically, the Court must accept the facts alleged in the pleadings as true and draw all reasonable factual inferences in the light most favorable to the nonmovant.

The Supreme Court has retired the standard for dismissal under
Rule 12(b)(6) announced in Conley v. Gibson, 355 U.S. 41 (1957),
that "a complaint should not be dismissed for failure to state a
claim unless it appears beyond doubt that the plaintiff can prove
no set of facts in support of his claim which would entitle him
to relief." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955,
1964-1965 (2007) (citing Conley, 355 U.S. at 45-46). Instead,
the Supreme Court has instructed that dismissal is not
appropriate if the plaintiff alleges sufficiently detailed facts
to "raise a right to relief above the speculative level." Id.
The moving party bears the burden of demonstrating that dismissal
is appropriate under Rule 12(b)(6) and that judgment on the
pleadings is appropriate under Rule 12(c).

## DISCUSSION

### I.  Motion To Dismiss In Part Declaratory Judgment Counterclaims

By its Motion To Dismiss In Part Declaratory Judgment
Counterclaims, Pfizer requests the Court to dismiss Ranbaxy's
Fourth, Fifth, Sixth and Seventh Counterclaims, all of which
pertain to the '995 patent. Pfizer contends that there is no
justiciable case or controversy between the parties and no
declaratory judgment jurisdiction with respect to these
counterclaims based on the covenant not to sue.

In response, Ranbaxy contends that Pfizer has not agreed to
provide Ranbaxy with a covenant not to sue related to any reissue

5

of the '995 patent.  Thus, Ranbaxy contends that Pfizer may, and

in fact intends, to assert any reissue of the '995 patent against

Ranbaxy's generic product.  Ranbaxy does not oppose the dismissal

without prejudice of its Fourth and Fifth Counterclaims regarding

noninfringement and invalidity of the '995 patent.  In this

regard, Ranbaxy acknowledges that the covenant not to sue

precludes infringement liability on the existing '995 patent, and

infringement and invalidity with respect to any reissued patent

rests on the scope of the reissue.  However, Ranbaxy maintains

that the Court should exercise jurisdiction over its Sixth and

Seventh Counterclaims concerning the unenforceability of the '995

patent, because these claims concern Pfizer's conduct before the

Patent and Trademark Office ("PTO") in prosecuting the original

'995 patent.  Therefore, Ranbaxy contends that the reissue

proceedings have no affect on its allegations that the '995

patent was procured through inequitable conduct.

The parties agree that Ranbaxy's Fourth and Fifth

Counterclaims should be dismissed without prejudice.

Accordingly, the Court will focus its decision on whether the

Sixth and Seventh Counterclaims alleging unenforceability of the

'995 patent should be dismissed.

To establish jurisdiction under the Declaratory Judgment Act

for the counterclaims asserted here, Ranbaxy bears the burden of

proving that the facts alleged "under all the circumstances show

6

that there is a substantial controversy, between the parties
having adverse legal interests, of sufficient immediacy and
reality to warrant the issuance of a declaratory judgment."
MedImmune Inc. v. Genentech, Inc., 127 S. Ct. 764, 771 (2007).
As the Supreme Court further explained, jurisdiction over a
declaratory judgment action requires "'the dispute [to] be
definite and concrete, touching the legal relations of parties
having adverse legal interests; and that it be real and
substantial and admit of specific relief through a decree of a
conclusive character, as distinguished from an opinion advising
what the law would be upon a hypothetical state of facts.'"  Id.
(citations omitted).

The standard announced by the Supreme Court in MedImmune
replaces the "reasonable apprehension of imminent suit test" that
had previously been used to determine whether jurisdiction exists
under the Declaratory Judgment Act.  See Teva v. Novartis, 482
F.3d 1330, 1339 (Fed. Cir. 2007).  As a result, Ranbaxy questions
whether MedImmune abrogates the line of Federal Circuit cases
holding that a covenant not to sue on an original patent divests
the Court of jurisdiction, even when a reissue application
covering the same subject matter as the original patent
application is pending.  See e.g., Super Sack Mfg. Corp. v. Chase
Packaging Corp., 57 F.3d 1054, 1058 (Fed. Cir. 1995).

7

Pfizer contends that Super Sack and its progeny are not altered by MedImmune, because those cases do not depend upon the reasonable apprehension of imminent suit test and instead turn on general Supreme Court precedent, which in effect applied the same test advanced in MedImmune, i.e. a totality of the circumstances test.  Indeed, in Benitec Australia, Ltd. v. Nucleonics, Inc., 495 F.3d 1340, 1346 (Fed. Cir. 2007), the Federal Circuit noted that Super Sack has not been expressly overruled, and while Super Sack applied the "reasonable apprehension of imminent suit test," it did not depend upon it.

Examining the totality of the circumstances in light of the MedImmune standard for jurisdiction over declaratory judgment claims, the Court concludes that Ranbaxy cannot establish that a current and concrete controversy exists between the parties.  The existence of issued and presently enforceable patent claims against a declaratory judgment plaintiff is a necessary prerequisite to the continued litigation of a declaratory judgment action.  This basic principle of justiciability stands alone and apart from the "reasonable apprehension of imminent suit" test.  See e.g., GAF Building Materials Corp. v. Elk Corp. of Dallas, 90 F.3d 479, 482-483 (Fed. Cir. 1996) ("We therefore hold that a threat is not sufficient unless it is made with respect to a patent that has issued before a complaint is filed.")  In this case, Claim 6 of the '995 patent has been

8

declared invalid, and Pfizer has agreed not to sue Ranbaxy with respect to the other claims of the '995 patent. As a result, there is no valid patent which currently exists that can be enforced against Ranbaxy. See Merck & Co., Inc. v. Apotex, Inc., 488 F. Supp. 2d 418, 423-425 (D. Del. 2007) (Sleet, J.) (applying MedImmune standard and concluding that covenant not to sue divests court of subject matter jurisdiction).

Ranbaxy contends that because the covenant not to sue does not embrace any reissue of the '995 patent, subject matter jurisdiction still exists over its declaratory judgment counterclaims. However, the question of whether a new patent will ever be reissued is speculative, purely hypothetical and unripe for judicial determination. Accordingly, the Court concludes that these circumstances do not support jurisdiction under the MedImmune standard.

For these same reasons, the Court also concludes that Article III standing is lacking in this case. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992). Ranbaxy has not suffered any injury in fact based upon the original '995 patent in light of the invalidity of Claim 6 and the covenant not to sue regarding the remaining claims. As for any reissue of the '995 patent, any injury Ranbaxy might suffer is, at this juncture, speculative. Pfizer has not yet indicated that it intends to assert a reissued patent against Ranbaxy, and it is unclear

9

whether the '995 patent will in fact reissue.  Treemond Co. v.
Shering Corp., 122 F.2d 702, 705 (3d Cir. 1941) ("There can be no
doubt than an 'actual controversy' does not exist until the
patentee makes some claim that his patent is being infringed.").
Indeed, jurisdiction under the Hatch-Waxman Act is also
unsupported in this case, because (1) Pfizer cannot enforce a
pending reissue application against Ranbaxy; (2) any reissued
patent has not been listed in the FDA Orange Book and cannot be
until it has issued, 21 U.S.C. § 355(c)(2); and (3) Ranbaxy has
not had to certify against a reissued patent.  Teva, 482 F.3d at
1344 (describing prerequisites for establishing a justiciable
controversy under the Hatch-Waxman Act).  Thus, the Court's
exercise of jurisdiction in these circumstances would result in
nothing more than an advisory opinion regarding the
enforceability of a yet to be reissued patent, a result wholly
inconsistent with the most basic precepts of jurisdictional
jurisprudence.

In sum, the Court concludes that the possibility that a new
patent may issue at some future point is insufficient to create
the type of real and immediate legal case or controversy as
required for declaratory judgment jurisdiction and standing under
Article III.  Accordingly, the Court will grant Pfizer's Motion
To Dismiss Ranbaxy's Fourth, Fifth, Sixth and Seventh
Counterclaims.

## II.  Pfizer's Motion To Dismiss And For Partial Summary Judgment On The Pleadings

A.  Whether Pfizer Is Entitled To Dismissal Of Ranbaxy's First Counterclaim And Third Affirmative Defense On The Basis Of Res Judicata

With respect to its Motion To Dismiss And For Partial Summary Judgment On The Pleadings, Pfizer requests the Court to dismiss Ranbaxy's First Counterclaim and its Third Affirmative Defense, both of which relate to the '893 patent.  Specifically, Ranbaxy's First Counterclaim and Third Affirmative Defense allege that the '893 patent and its patent term extension are invalid as obvious under 35 U.S.C. § 103.  Pfizer contends that the First Counterclaim and Third Affirmative Defense are barred by the doctrine of res judicata and/or collateral estoppel as a result of the final judgment entered in the prior Lipitor® litigation. According to Pfizer, Ranbaxy knew about the prior art upon which it now bases its obviousness claim, but declined to assert that art in the Lipitor® litigation.  Thus, Pfizer contends that Ranbaxy is precluded from now raising its obviousness claim.

Ranbaxy contends that res judicata principles should be more narrowly applied in this case because the issue of obviousness was never presented at trial or adjudicated in the Lipitor® litigation, and significant factual and legal changes have occurred since the Lipitor® litigation that fundamentally alter the obviousness analysis of the '893 patent.  With respect to the legal landscape, Ranbaxy contends that the Supreme Court's

11

decision in KSR Int'l Co. v. Teleflex Inc., 127 S. Ct. (2007),
"dramatically lowered the bar of 35 U.S.C. § 103" by removing the
teaching, suggestion or motivation to combine the prior art test
from the obviousness inquiry.  (D.I. 19 at 2, 9-12.)  With
respect to the factual landscape, Ranbaxy contends that Pfizer
withheld "critical information" about the test data it relied
upon to gain the issuance of EP 247 633, the European counterpart
to the '893 patent.  (Id. at 2, 13-14.)  Ranbaxy asserts EP 247
633 as the prior art over which the '893 patent is obvious.
According to Ranbaxy, it could not have presented an obviousness
challenge to the '893 patent in the Lipitor® litigation because
it was unable to timely analyze and compare the relevant data as
a result of Pfizer's actions.

The doctrine of res judicata is considered 'a rule of
fundamental and substantial justice,' and not merely a 'matter of
technical practice or procedure.'"  Equal Employment Opportunity
Commission v. U.S. Steel Corp., 921 F.2d 489, 492 (3d Cir. 1990)
(quoting Hart Steel Co. v. Railroad Supply Co., 244 U .S. 294
(1917)).  "Res judicata avoids the expense and vexation attending
multiple lawsuits, conserves judicial resources, and fosters
reliance on judicial action by minimizing the possibility of
inconsistent decisions."  Id.

Res judicata, also known as claim preclusion, "requires a
showing that there has been (1) a final judgment on the merits in

12

a prior [law]suit involving (2) the same claim and (3) the same
parties or their privies." Id. at 493 (citing United States v.
Athlone Industries, Inc., 746 F.2d 977, 983 (3d Cir. 1984)).

Ranbaxy does not dispute that the third element of the res
judicata analysis is met here.  However, Ranbaxy suggests that
this proceeding does not involve the same claim or a final
judgment on the merits of that claim, because obviousness was
neither raised nor adjudicated in the Lipitor® litigation.

Res judicata requires "that a plaintiff present in one suit
all of the claims for relief that he may have arising out of the
same transaction or occurrence."   Lubrizol v. Exxon Corp., 929
F.2d 960, 963 (3d Cir. 1991).  In this regard, the operative
question is not whether the issue was actually litigated, but
whether it "could have been raised in the earlier proceeding."
Board of Trustees v. Centra, 983 F.2d 495, 504 (3d Cir. 1992);
Gregory v. Chehi, 843 F.2d 111, 116 (3rd Cir. 1988).

In the Lipitor® litigation, Ranbaxy challenged the validity
of the '893 patent.  As a result, Ranbaxy was required to raise
all of its invalidity defenses at that time, including its
challenge based on obviousness.  Although Ranbaxy concedes that
it was aware of the prior art it now asserts against the '893
patent, Ranbaxy contends that it was unable to appreciate the
impact of that prior art due to certain facts which Pfizer
allegedly withheld.  The Court does not find the grounds asserted

13

by Ranbaxy to be sufficient to avoid the effects of res judicata
in the circumstances of this case.[1]  Ranbaxy was informed about
the mislabeled data upon which it bases its change of fact
argument at least as early as July 19, 2004, during the
deposition of Francis J. Tinney, Ph.D.  (D.I. 21, Ex. A at 48-
50.)  Mr. Tinney's deposition occurred more than one hundred days
before trial.  The parties then entered into a stipulation
concerning the mislabeled data on September 3, 2004, nearly three
months before trial.  (D.I. 191 in Civ. Act. No. 03-209.)  That
Ranbaxy may have needed more time to evaluate this data is not a
change in the factual landscape which should affect this
litigation.  Rather, Ranbaxy's appropriate remedies rested in the
previous Lipitor® litigation through either extensions of time
there, or applications for a new trial and/or relief from
judgment under Federal Rule of Civil Procedure 60(b).

       To the extent that Ranbaxy directs the Court to case law
suggesting that a change in factual circumstances precludes the
application of res judicata, the Court concludes that those cases
have little relevance to the present action.  In addition to the

_____

[1]       Where the circumstances suggest a fraud or negligent
misrepresentation by a party, some courts have declined to apply
res judicata.  See James Wm. Moore, et al., Moore's Federal
Practice § 131.21[1].  However, Ranbaxy's allegations regarding
Pfizer's conduct do not, in the Court's view, rise to the level
of either fraud or negligent misrepresentation, particularly
where, as here, Ranbaxy was informed of the labeling error well
prior to trial.  Indeed, even Ranbaxy does not go so far as to
characterize Pfizer's conduct as fraudulent or negligent.

14

fact that Ranbaxy was aware of the change in fact it now asserts

during the previous Lipitor® litigation, the cases to which

Ranbaxy cites arise in factual and legal contexts dissimilar to

the circumstances here. See e.g., Brown v. Felsen, 442 U.S. 127,

132-134 (1979) (noting in a bankruptcy case that "respondent's

res judicata claim is unlike those customarily entertained by the

courts); Commissioner v. Sunnen, 333 U.S. 591 (1948) (discussing

the operation of res judicata in the unique circumstances of tax

cases where each tax year presents a new claim and inequities

among taxpayers would result if determinations which are

erroneous or obsolete are permitted to perpetuate); In re Bose

Corp., 476 F.3d 1331 (Fed. Cir. 1997) (recognizing in the context

of administrative proceedings that courts should "exercise

caution in applying claim preclusion in an ex parte proceeding").

Accordingly, the Court is not persuaded that the case law cited

by Ranbaxy counsels against the application of res judicata here.

　　　Ranbaxy also contends that res judicata is precluded in this

case, because the Supreme Court's KSR decision represents a

change in the controlling law. However, a change in the law does

not ordinarily affect the res judicata effect of a judgment.

Indeed, the Supreme Court has declined to recognize an exception

to res judicata based upon a change in the controlling law.

Federated Dept. Stores, Inc., v. Moitie, 452 U.S. 394, 398-399

(1981). As the Supreme Court explained in Federated:

Nor are the res judicata consequences of a final,
unappealed judgment on the merits altered by the fact
that the judgment may have been wrong or rested on a
legal principle subsequently overruled in another case.
<u>Angel v. Bullington</u>, 330 U.S. 183, 187, 67 S. Ct. 657,
659, 91 L. Ed. 832 (1947); <u>Chicot County Drainage
District v. Baxter State Bank</u>, 308 U.S. 371, 60 S. Ct.
317, 84 L. Ed. 329 (1940); <u>Wilson's Executor v. Deen</u>,
121 U.S. 525, 534, 7 S. Ct. 1004, 1007, 30 L. Ed. 980
(1887).  As this Court explained in <u>Baltimore S.S. Co.
v. Phillips</u>, 274 U.S. 316, 325, 47 S. Ct. 600, 604, 71
L. Ed. 1069 (1927), an "erroneous conclusion" reached
by the court in the first suit does not deprive the
defendants in the second action "of their right to rely
upon the plea of res judicata.... A judgment merely
voidable because based upon an erroneous view of the
law is not open to collateral attack, but can be
corrected only by a direct review and not by bringing
another action upon the same cause [of action]." We
have observed that "[t]he indulgence of a contrary view
would result in creating elements of uncertainty and
confusion and in undermining the conclusive character
of judgments, consequences which it was the very
purpose of the doctrine of res judicata to avert." <u>Reed
v. Allen</u>, 286 U.S. 191, 201, 52 S. Ct. 532, 534, 76 L.
Ed. 1054 (1932).

<u>Id.</u>

To the extent Ranbaxy relies on a contrary statement by the

Supreme Court in <u>State Farm Mut. Auto. Ins. Co. v. Duel</u>, 324 U.S.

154 (1945), the Court concludes that <u>State Farm</u>'s discussion of

res judicata is dicta, and in any event, <u>State Farm</u> has been

superseded by <u>Federated</u>.  See <u>e.g.</u>, <u>Forsman v. Chater</u>, 1996 WL

396718, *1 (9th Cir. July 12, 1996).  The Court's conclusion is

consistent with the prevailing view by courts and commentators

alike that a change in the law is insufficient to bar the

application of res judicata.[2]  See e.g. Wilson v. Lynaugh, 878
F.2d 846, 850-851 (5th Cir. 1989), Precision Air Parts, Inc. v.
Avco Corp., 736 F.2d 1499, 1503 (11th Cir. 1984) ("The general
rule in this circuit, and throughout the nation, is that changes
in the law after a final judgment do not prevent the application
of res judicata and collateral estoppel, even though the grounds
on which the decision was based are subsequently overruled.");
Barzin v. Selective Service Local Board No. 14, 446 F.2d 1382,
1383 (3d Cir. 1971) (recognizing that "a prior decision may serve
as res judicata even if a contrary judicial decision on the legal
issues involved intervenes between the first and second suits.");
see also 18 Wright, Miller & Cooper, Federal Practice and
Procedure:  Jurisdiction § 4403 (2d ed. 2002).  Accordingly, the
Court concludes that Ranbaxy has not demonstrated that res
judicata is precluded in this action by a change in controlling
law.

---

[2]    Courts have recognized an exception to this principle
in the case of momentous legal changes invoking important and
fundamental changes in constitutional rights.  For example, the
Court of Appeals for the Eleventh Circuit did not apply res
judicata to a state court judgment because three months after
that judgment was issued the Supreme Court overruled the separate
but equal doctrine in Brown v. Bd. of Education, 347 U.S. 483
(1954).  See Precision Air, Inc., 736 F.2d at 1504 (discussing
Christian v. Jemison, 303 F.2d 52, 54 (5th Cir. 1962)).  Whatever
can be said of the changes in patent law that may flow as a
result of the Supreme Court's decision in KSR, the Court cannot
conclude that KSR stands on par with such precedent shifting
cases as Brown v. Bd of Education.

17

In sum, the Court concludes that Pfizer is entitled to the dismissal of Ranbaxy's First Counterclaim and Third Affirmative Defense. Ranbaxy's First Counterclaim and Third Affirmative Defense implicate the validity of the '893 patent, a claim which was raised and litigated to a final judgment on the merits in the Lipitor® litigation between these same parties and/or their privies. Any failure by Ranbaxy to assert the obviousness claim it seeks to raise here does not diminish the res judicata effect of the final judgment in the Lipitor® litigation. Accordingly, the Court will grant Pfizer's Motion To Dismiss.

B.   Whether Pfizer Is Entitled To A Judgment Of
     Infringement Of the '893 Patent Based Upon The Doctrine
     Of Collateral Estoppel

By its Motion, Pfizer also requests the Court to enter judgment on the pleadings in its favor on the question of whether Ranbaxy infringes the '893 patent under 35 U.S.C. § 271(e)(2). Specifically, Pfizer contends that Ranbaxy is collaterally estopped from denying infringement of the '893 patent based on the inclusion of atorvastatin calcium in its new ANDA product.

The party seeking to invoke the doctrine of collateral estoppel must demonstrate four elements: (1) the previous determination was necessary to the decision; (2) the identical issue was previously litigated; (3) the issue was actually decided in a decision that was final, valid, and on the merits; and (4) the party being precluded from relitigating the issue was

18

adequately represented in the previous action. <u>See</u> <u>e.g.</u>,
<u>Novartis Pharms. Corp. v. Abbott Labs.</u>, 375 F.3d 1328, 1333 (Fed.
Cir. 2004); <u>Henglein v. Colt Indus. Operating Corp.</u>, 260 F.3d
201, 209 (3d Cir. 2001).   The Third Circuit also considers
whether the party being estopped had a full and fair opportunity
to litigate the issue to a final and valid judgment in the prior
litigation.   <u>Seborowski v. Pittsburgh Press Co.</u>, 188 F.3d 163,
169 (3d Cir. 1999); <u>National R.R. Passenger Corp. v. Pennsylvania
Pub. Util. Comm'n</u>, 288 F.3d 519, 525 (3d Cir. 2002).

Ranbaxy does not contest infringement of the '893 patent,
but contends that the Court should not enter a final judgment of
infringement while invalidity is being contested.   However, the
Court has concluded that Ranbaxy is barred by the doctrine of res
judicata in light of the Lipitor® litigation from contesting the
validity of the '893 patent.   Accordingly, the Court will grant
Pfizer's Motion For Partial Summary Judgment and enter judgment
against Ranbaxy and in favor of Pfizer on Pfizer's claim that
Ranbaxy infringed the '893 patent under 35 U.S.C. § 271(e)(1) by
filing an ANDA seeking approval from the FDA to engage in the
commercial manufacture, use or sale of a product containing
atorvastatin calcium as an active ingredient prior to the
expiration of the patent.

19

## CONCLUSION

For the reasons discussed, the Court will grant Pfizer's Motion To Dismiss In Part Declaratory Judgment Counterclaims and its Motion To Dismiss And For Partial Judgment On The Pleadings Pursuant To Federal Rule Of Civil Procedure 12(c).  A judgment of infringement based on the '893 patent will be entered in favor of Pfizer and against Ranbaxy.

An appropriate Order will be entered.